25 C.C.P.A. (Patents)

## In re DEAKINS.

### Patent Appeal No. 3946.

Court of Customs and Patent Appeals.
May 31, 1938.

Allen E. Peck, of Washington, D. C., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting claims 54 to 57, inclusive, and 64 to 68, inclusive, in appellant's application for a patent for an alleged invention relating to improvements in a mud pump valve.

Of the appealed claims, Nos. 54 and 64 are illustrative. They read:

"54. In combination; a valve body adapted to move to and from a cooperating annular valve seat parallel to the axis of the valve body; and an annular sealing member on the upper face of the valve body having a resilient peripheral portion including an upstanding lip providing a peripheral engagement surface normally flaring upwardly and outwardly, the valve body having abutment surfaces adjacent both the periphery and the axis thereof adapted to engage the valve seat, said abutment surfaces being at angles to the axis of the valve body appreciably greater than the angle of said flaring peripheral engagement surface to said axis, the flaring peripheral engagement surface being of such diameter as to engage the valve seat by the time the abutment surfaces of the valve body engage the valve seat, and the lip of the sealing member being exposed to fluid pressure for deforming the flaring peripheral engagement surface of the sealing member for sealing contact with the valve seat."

"64. In a valve; a seat member comprising an annular wall and an abutment surface below the upper end of and in the bore defined by the annular wall, the abutment surface being adjacent the axis of the annular wall, the upper end of the annular wall providing an outwardly flaring annular sealing surface; a valve body adapted to move to and from the abutment surface parallel to the axis of the annular wall, the abutment surface being adapted for engagement by the valve body at an angle to the axis of the annular wall appreciably greater than the angle of the annular sealing surface to said axis; an annular sealing member on the upper face of the valve body having a resilient peripheral portion including an upstanding lip providing a peripheral engagement surface normally flaring at substantially the same angle as that of the annular sealing surface and of such diameter as to engage the annular sealing surface by the time the valve body engages the abutment surface; and a retaining member overlying the sealing member and of a diameter less than that of the upstanding lip whereby said lip is exposed to fluid pressure for deforming its flaring peripheral engagement surface for sealing contact with the annular sealing surface; there being space below said flaring peripheral engagement surface when the valve is closed, for reception of material dislodged from the annular sealing surface."

The references are:

Hargreaves (Italian), No. 1,119, October 18, 1884;

Wood, No. 612,890, October 25, 1898;

Biedermann, No. 1,530,924, March 24, 1925;

French patent, No. 669,260, August 3, 1929;

Melott, No. 1,990,557, February 12, 1935.

The invention disclosed in appellant's application relates to a valve for use in mud pumps adapted to pump mixtures containing abrasive materials. The structure of the valve is sufficiently set forth in the quoted claims.

It appears from the record that appellant was allowed twenty claims defining a valve which, he stated in his application, is of "simple construction."

In his application appellant stated that the object of his invention is to provide a valve "having a seat member including a substantially cylindrical sealing face or seat and a valve closure member having a circular or annular sealing member of rubber material adapted to enter the substantially cylindrical sealing seat or face of the seat member and to be deformed by fluid pressure so as to expand against the sealing face of the seat member. It is a further object of the invention to provide a valve of the above character in which the

*cooperative parts are so formed that the sealing member wipes the sealing face clean as it moves into closed position, thereby reducing to a minimum the particles of abrasive material which may rest between the sealing member and the sealing face,* the result thereof being that the wear between these parts is minimized and the useful life of the valve materially extended." (Italics ours.)

The Primary Examiner described appellant's valve and its mode of operation as follows: "The valve comprises a seat ring having an opening or port in which a valve head seats to stop the passage of fluid. The seat comprises a cylindrical portion of said port or it may be slightly tapered. A web member is provided at the lower end of the bore to receive the shock of the closing movement of the valve. The valve head comprises a metallic plate having a snug fit in the seat ring when seated. The said plate is provided with a guide stem upon which a resilient sealing disc is mounted. The peripheral portion of the disc is cup-shaped or hollowed out to provide a thin lip for cooperating with the seat ring to seal its port. The outer edge of the sealing disc is tapered at substantially the same angle as the seat ring. Upward fluid pressure causes the valve to open while pressure in the opposite direction causes a closing movement thereof. During the said closing movement the metallic plate is received within the cylindrical seat ring and causes a partial closing of the port. The plate continues downward until it is stopped by engagement with the web member which receives the shock of the closing movement of the valve thereby relieving the packing disc of the consequent wear. Just prior to the engagement between the plate and web member, the outer face of the resilient disc contacts the tapered face of the seat and as the plate continues to drop the resilient disc is caused to wipe small dirt particles from said tapered face. When the downward movement is arrested by the web member the fluid pressure above the valve head presses against the cupped surface of the resilient disc and forces the thin peripheral lip outwardly against the seat ring to complete the seal."

In describing and applying the references to the appealed claims, the Primary Examiner said:

"Wood shows a pump valve having a metallic plate upon which is mounted a resilient disc. The plate receives the shock of the closing movement and effects a seal between itself and the seat. Fluid pressure from above enters through openings when the valve is seated to force the resilient disc outwardly against the seat to effect or complete the seal.

"Fig. 3 of Wood shows a modification similar to Fig. 6 of the application in that a resilient cupped washer is used in place of a flat disc.

"Fig. 4 of the French patent is similar to Wood in that a metallic plate portion carries a resilient packing which is pressed outwardly against the seat by the fluid pressure from above for completing the seal.

"In Biedermann is shown another form of pump valve in which a shoulder is provided on the stem of the valve for engaging the web member for receiving the shock of the closing movement. The rubber disc is normally flat but is caused to assume a cupped configuration when seated because its outer periphery contacts the tapered seat before the metallic parts arrest the downward movement of the valve. Fluid pressure from above then acts downwardly to press the outer portion of the disc into tighter engagement with the seat face.

"Fig. 2 of the patent to Hargreaves is similar to Biedermann, just described, except that the downward movement of the valve head is arrested by the lower metallic plate contacting the upper edges of the webs. The packing is flexible.

"Claims 54–57 were finally rejected as unpatentable over Wood or the French patent with the guide and stop of Biedermann or Hargreaves substituted for the lower metallic seating portions of the basic references.

"In Figs. 1 and 3 of Wood and Fig. 4 of the French patent are shown valve bodies having annular sealing members on the upper faces thereof and having upstanding flaring lips for engaging the valve seat 'by the time' the abutment surfaces of the valve bodies and seats contact. The fluid pressure above the lips press them outwardly into engagement with the seat. Since both these valves have metallic engaging stop portions on the bodies and seats, respectively, no invention is seen in substituting for the metallic stop portion of the seat, a metallic web member as shown * * * [in]

848

Hargreaves and Biedermann. In making the above substitution it would probably be necessary or desirable to substitute the stem guides of Hargreaves or of Biedermann for the wing guide members on the lower face of Wood. The valve bodies of the references are 'adapted to move parallel to the axis of the valve body' as recited in lines 2 and 3 of each of the claims.

"Claims 64–68 are rejected as unpatentable over Fig. 3 of Wood or Fig. 4 of the French patent in view of Hargreaves as applied above. The abutment surface of Hargreaves is adjacent the annular wall and when substituted for the lower half of the tapered abutment face of the seat ring of the basic references it clearly meets the claims. The 'space' below the valve engagement surface for receiving dislodged material as recited in claims 64, 66 and 67 is represented by the seat bore or port opening of each of the references. The patent to Melott has been added to the record to show a 'space' similar to applicant's space.

"Claims 64–68 are further rejected as unpatentable over Hargreaves in view of Wood or the French patent each of which suggests providing the periphery of Hargreaves' packing with a permanent upstanding lip to seat in the tapered seat instead of being flexed into position by the seating of the valve as is now the case.

"It is believed that the twenty allowed claims fully protect applicant's novelty."

Although the Board of Appeals applied the references to the appealed claims differently than did the examiner, it expressly affirmed his application of them and his holding with regard thereto.

It is contended by counsel for appellant that none of the references, either alone or in combination, discloses appellant's structure; that none of them will serve the purpose for which the involved structure was intended, that of causing the flexible sealing disc of the valve to wipe the "valve seat" free from abrasive material; and that, even if it be assumed that the patent to Wood discloses a resilient disc provided with a lip in engagement with the valve seat which wipes abrasive material from the upper portion of the seat, the material so removed would collect in the lower portion of the seat and be trapped between the valve and its seat because no space was provided in the

Wood structure or in the structure of any of the references for the collection of such material. Counsel further contends that the Melott patent, cited by the Primary Examiner as disclosing a space where the abrasive material wiped from the valve seat might be collected, does not show any such space, but, on the contrary, shows a space at the upper portion of the valve seat which could not have been designed or intended to receive material dislodged from the valve seat.

It may be said at this point that we are in agreement with the views expressed by counsel for appellant that the space disclosed in the Melott patent was obviously not designed for the collection of abrasive materials wiped from the valve seat. However, we are not in agreement with the view expressed by him that it was necessary for the Patent Office to cite a reference showing a space designed for such purpose.

If all that appellant has done is to combine the references in an obvious way, the "annular space" provided by him for the collection of abrasive materials wiped from the valve seat certainly would not involve invention, even though such a space is not disclosed in the prior art.

The French and Wood patents disclose conical valve bodies and conical valve seats, and, in the patents to Biedermann and Hargreaves, the valve bodies engage the horizontal portions of the valve seats.

It is clear from the record, we think, that, with the exception of an "annular space" for receiving abrasive materials wiped from the valve seat, every other element defined in the appealed claims is disclosed in the references. It is apparent, therefore, that, in order to secure the novel structure disclosed by appellant and the very important and beneficial results obtained therefrom, it was necessary to combine the elements defined in the references into a new combination.

Although it is a matter of no importance in the decision of this case, it may be observed that some of the appealed claims and some of the allowed claims differ but little in language and not at all in substance. It is unfortunate that the applicant deemed it necessary to present so many claims, some of which vary only in immaterial verbiage. However, as we understand the decisions of the Patent Office tribunals, the appealed claims were reject-

ed on the references of record, not on the ground that the application contained an undue multiplicity of claims. Accordingly, the sole issue before us is whether it involved invention to combine the references in the manner set forth in the quoted excerpt from the decision of the Primary Examiner, and, by so doing, secure not only a novel structure, but also a new and useful result.

We have carefully examined the references for a suggestion of appellant's combination and the new and useful results obtained thereby, but have found none. Of course, if the references are examined in the light of appellant's disclosure, the solution of the problem confronting appellant seems simple. A problem solved is no longer a problem, and one is prone to overlook the fact that it ever existed. Whether the solution of a problem involves invention, is a matter of opinion.

It is our view that appellant's combination, as defined by the appealed claims, was not obvious to one skilled in the art, and that it involves invention.

The decision of the Board of Appeals is reversed.

Reversed.