52 CCPA
**Application of Charles H. GOODMAN, Edward K. Rice, Klaus Rosenstern and George W. Lenzie.**
**Patent Appeal No. 7250.**

United States Court of Customs and Patent Appeals.
Dec. 17, 1964.

James H. Littlepage, Dugald S. McDougall, Chicago, Ill., for appellants.

Clarence W. Moore, Washington, D. C. (L. F. Parker, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the decision of the Board of Appeals affirming the rejection under 35 U.S.C. § 103 of all of the claims in appellants' patent application.[1]

The invention relates to the formation of hollow concrete slabs which are used as beams. The beams are formed by pouring concrete into a mold containing a central core element running the length of the mold. The concrete fills the void between the mold walls and the central core element. When the concrete is partially cured, the core element is removed by moving the outer walls of the core element inward, thus making the core element smaller than the hollow central core. Appellants state that during curing of long hollow concrete slabs the core element within the mold is suspended only at its ends and thus tends to bend in the middle due to gravity. As a result, the core is not straight, making it difficult to remove the core element and causing a nonuniform beam cross-section. Appellants claim to have solved the problem of bending of the core element by prestressing the core element in an upward direction to make it free of gravity induced bending.

Appellants' core assembly is set forth in rejected claims 1, 3, 5, 6, 7, 9 and

---

1. Serial No. 772,790, filed November 10, 1958, for "Core Element for Forming Hollow Cast Structures."

11. Claim 1 is representative and reads as follows:

"A Core assembly for use in forming relieved passages in molded slabs, comprising an elongated beam formed of metal plates joined together at their edges to define an essentially prismatic structure, filamentary pre-stressing means of high-tensile-strength material disposed within said structure and anchored thereto adjacent the ends thereof, means for adjusting the tension on said filamentary means, said means being capable under tension of holding said structure in true prismatic shape, free of gravity-induced bending, when said structure is suspended horizontally from its ends, a set of wall plates mounted on said beam externally and generally parallel thereto, means for advancing and retracting said wall plates laterally with respect to said beam, the edges of said wall plates defining narrow gaps therebetween which vary in width as said plates are advanced and retracted, and flexible web means bridging over said gaps."

The core assembly of the claims is illustrated below by figures 2 and 6 of appellants' application.

Fig. 2

Fig. 6

An end section of the core assembly is shown in figure 2. The central beam is shown as 15. The wall plates are 16 and 17. The wall plates are joined by flexible web 38. Before removing the core assembly from a partially cured beam, the wall plates are moved inward toward central beam 15. The means for accomplishing this inward movement are shown in figure 6. By moving the central beam to

the right while holding wall plates 17 stationary with respect to lateral movement, the wall plates are drawn toward the central beam due to movement of the pins attached at 26 in the cam slots (not numbered). The end walls 16 are manipulated in the same manner. The central beam is prestressed in an upward direction by means of cables 23.

The board relied upon the following references:

| Terry | 433,189 | July 29, 1890 |
|---|---|---|
| Adam | 796,789 | August 8, 1905 |
| Beckman | 1,052,207 | February 4, 1913 |
| Cobi | 2,153,741 | April 11, 1939 |
| McCall | 2,315,634 | April 6, 1943 |
| German Patent | 62,205 | May 14, 1892 |

The board affirmed the examiner's position that the claims were obvious over McCall in view of Adam, Terry and Beckman.

The basic reference, McCall, is illustrated by the following drawings:

FIG. 2.

FIG. 5.

FIG. 7.

We agree with the solicitor that:

"The patent to McCall * * * also shows an expandable core mold for use in casting hollow concrete floor slabs and other cementitious building units of varying length comprising an elongated metallic beam 28 * * * [Fig. 2] of an essentially rectangular prismatic structure, rigid walls or strips 24 mounted on said beam externally and generally parallel thereto and an envelope 23 of flexible material for bridging the gap formed between the edges of the walls or strips 24 as they are advanced and retracted. When the beam 28 is rotated, its corners engage the inner faces of the core walls 24 and force them outwardly to expand the beam.

"In an alternative embodiment * * * [Figs. 5 and 7], the beam is in the form of a metallic tube having holes to accommodate pins 34 which rest against a rod 36 provided with wedges 37. Longitudinal movement of the rod [36] brings the wedges into contact with the pins to expand the core."

The Adam patent discloses a core-bar for use in fabricating concrete pipe. The core-bar comprises four outer metal walls which form a cylindrical core and a central rod on which the walls are mounted by means of cam slots on the walls and pins on the central rod. Longitudinal movement of the rod produces expansion or contraction of the wall plates.

The Terry patent discloses a hollow metal pole containing an adjustable cable for prestressing the pole to brace it against lateral strain. The internal bracing shown by Terry is essentially the same as that set forth in appellants' claims.

The Beckman patent discloses an I-beam for use as a building element. The beam is trussed by a cable connecting the lower and upper portion of the beam. Once again the arrangement of the pre-stressing cable does not differ material-ly from the prestressing means of appellants' claims.

It was the examiner's position that the McCall patent discloses a core assembly having expandable walls and that with regard to the specific actuating mechanism, it would be obvious to follow the teachings of Adam.

Appellants, in their brief, do not rely for patentability upon the structure of the outer walls and their means of attachment to the central beam. Their main contention is that it would be un-obvious to prestress the central beam against bending. The examiner's position was that:

"It is held to be but a matter of common, good engineering practice, as shown *for example* by Beckman or Terry, to truss up a structural member which needs such support, and to do so by placing a conventional type of truss *within* the structural member, which member can be made hollow to accommodate such a truss means, in order that the truss will put the structural member under stress. Thus it would not amount to invention to internally truss an actuating member within the core * * * [of the] primary patent * * * in order to retain lightness yet increase strength against bending * * *."

Appellants answer the examiner as follows:

"We concede, freely, that *if* someone before the present appellants had *taught* the core-element art the advantages of a perfectly straight central beam, it would have required no invention on the part of a skilled worker to fashion the necessary structure. But *without* such a teaching—with all the art going the other way in fact, toward balloons and rods and similar flexible structures—the ordinary skilled worker would have had nothing to point him in the direction that appellants traveled."

In support of their argument that the prior art must suggest the problem as well as the solution, appellants cite In re Hortman, 264 F.2d 911, 46 CCPA 814; In re Shaffer, 229 F.2d 476, 43 CCPA 758; In re Deakins, 96 F.2d 845, 25 CCPA 1153; H. C. White v. Converse & Son Co., 20 F.2d 311 (2d Cir. 1927). In all of these cases the problem solved was itself unobvious. The solicitor argues that the problem solved by appellants' structure was not unobvious.

We agree that the truss arrangement suggested by the Terry and Beckman patents would be an obvious means for strengthening or stiffening the central beam of a core assembly. Thus we must consider whether the desirability of stiffness is unobvious. Certainly it would be obvious that a more rigid core was needed if difficulty were encountered in removing the core because of bending. Appellants contend that all the art was going toward flexible structures. However, there is no indication that the Mc-Call core is flexible. Claim 2, for example, describes the outer walls as "rigid." The board noted that one of the problems set forth in the McCall patent was that of providing necessary strength. The only flexible part of the McCall patent is the outer envelope. The core itself, however, is not flexible. Even appellants' structure has a flexible web to allow for contraction. The core-bar of the Adam patent is also inflexible. The only patent showing a balloon-like core is Cobi which the board did not rely on. Thus it is clear that rigid core elements were known in the prior art. While the problem of maintaining the core element extremely straight in long beams is not specifically mentioned in the prior art of record, we do not feel that the problem is an unobvious one.

The failure of the prior art to mention a problem may be due to the fact that in practice the problem is not a serious one or that a large number of satisfactory solutions is readily apparent. Appellants have submitted an affidavit by Goodman, one of the inventors, as evidence that a problem did exist. We must consider this affidavit along with the other evidence of unobviousness in reaching our final conclusion. The affidavit set forth three facts:

"(1) The assignee, General Dynamics Corporation, completed a factory for the production of concrete slabs using the claimed cores in 1960. In 1961 sales of the slabs had exceeded $1,000,000 by September.

"(2) Many of the slabs have been sold in lengths up to 52 feet.

"(3) Slabs made with appellants' core have a cross-sectional area of about 444 square inches, whereas slabs made by prior art methods (using cores 'of paper or * * * an inflatable rubber "balloon"') require a cross-sectional area of 785 square inches."

Considering, first, commercial acceptance, we note from appellants' application that development of their core coincides with the "development of the pre-stressed-concrete art." The affidavit does not indicate that appellants' slabs are not prestressed. We do not know the relative importance of the core assembly and the prestressing of the concrete slab itself in the commercial success. Little weight can be given to the sales volume of appellants' slabs without some evidence that it was due to the cores from which the slabs were made, since appellants are claiming cores not slabs.

The increased length and reduced cross-sectional area of slabs obtained by using the claimed core is highly significant. However, a comparison to be meaningful should be made with a slab formed by using a rigid prior art core most similar to appellants' core. The affidavit does not make such a comparison but merely makes the statement, unsupported by facts showing how the comparison was made, that slabs made with appellants' core are superior to prior art slabs. It is not clear how much better appellants' slabs are than slabs made by the best prior art techniques available

for making long slabs. In summary, we find the affidavit not sufficiently persuasive for the reasons stated above.

We have considered all of appellants' arguments bearing on unobviousness of the claimed prestressed core assembly. We do not, however, feel that the evidence indicates that the invention was unobvious. The problem solved by appellants, if not specifically pointed out by the prior art, was at least an obvious one. The means of solving the problem were clearly suggested by the prior art. Finding no reversible error in the board's decision, it is therefore affirmed.

Affirmed.