34 C.C.P.A.(Patents)

## In re STORSAND.
### Patent Appeal No. 5207.

Court of Customs and Patent Appeals.
Dec. 9, 1946.

Rehearing Denied Feb. 27, 1947.

William L. Edmonston, of Washington, D.C., for appellant.

W. W. Cochran, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting as unpatentable over the patent to Allan, 1,702,924, February 19, 1929, all of the claims 10 to 18, inclusive, of an application for a patent for Bipolar Electrolyzers.

We were not favored with oral argument on behalf of appellant. His appeal was submitted on brief.

Claim 10 is illustrative of the subject matter in issue and reads as follows:

"10. A bipolar electrolyzer having the combination of a group comprising individual cells, a first container for electrolyte for therein separating the gas from the anolyte spaces of said cells, a second container for electrolyte for therein separating the gas from the catholyte spaces of said cells, a vessel for electrolyte having openings leading to the outside air for atmospheric pressure, a conduit for each of said

cells leading from the anolyte space thereof directly and independently into said first container for directly and independently discharging gas and anolyte thereinto, a conduit for each of said cells leading from the catholyte space thereof directly and independently into said second container for directly and independently discharging gas and catholyte thereinto, an electrolyte conduit for each of said containers leading therefrom into said vessel, a conduit for returning the electrolyte to each of said cells leading therefrom into said vessel said electrolyte performing a hydraulic circuit, through said conduits, out of said cells, into said containers, into said vessel, and back into said cells, and the electrolyte level of said vessel coacting with the said conduits to balance the electrolyte levels of said containers for equalizing the gas pressures in the anode and cathode spaces of each of said cells during the operation of the electrolyzer."

Claim 11 differs from claim 10 only in that it characterizes the vessel thereof as "serving additionally as electrolyte reservoir for its said cells."

Claim 12 differs from claim 10 by stating that the outlets of the pipes within the separating containers are below the levels of the electrolyte therein.

Claim 13 adds to claim 10 that the said outlets extend close to the bottoms of the said containers.

Claim 14 differs from claim 10 only by stating that refrigerating means in the containers are located both below and above the electrolyte level.

Claim 15 adds to claim 10 the limitation of a pump by means of which electrolyte is circulated from the vessel to each of the cells.

Claim 16 contains a limitation that the containers are elongated and horizontally disposed; that the conduits from the bottoms of the containers lead close to the bottom of the vessel and that the pipe leading from the vessel for recirculation of the electrolyte has a branch leading into each of the cells.

Claim 17 is somewhat broader than claim 10. Claim 18 adds to claim 17 the limitation that the vessel serves additionally "as an electrolyte reservoir for said cells, and pumping means for conveying the electrolyte from said vessel to said cells."

The application relates to a bipolar electrolyzer by the operation of which hydrogen and oxygen gases are generated by electrolysis.

The apparatus of the alleged invention comprises an electrolysis tank in which are groups of cells for producing hydrogen and oxygen by electrolytic decomposition of water; two containers in each of which is a refrigerating means and in one of which oxygen is separated from the fluid and in the other hydrogen is likewise separated, and a vessel for the liquid exposed to atmospheric pressure. The liquid from which oxygen and hydrogen are generated by electrolysis is called electrolyte. From each of the cells separate oxygen and hydrogen outlet pipes extend into each of the two respective separating containers. Those pipes extend to and end at a point below the liquid level in the containers from the bottom of which other pipes return the gas-free fluid to the said vessel from which extends a pipe for returning the liquid to the individual cells. The fluid is circulated by means of a pump. The fluid level of the vessel is said to coact with the conduits through which the electrolyte passes to balance the levels of the electrolyte in the two separating containers.

The patent to Allan relates to a bipolar electrolyzer and comprises an electrolysis tank, two containers for the separation of oxygen and hydrogen respectively and two tanks through which the circulating electrolyte returns to the cells. The electrolysis tank comprises a group of cells in which the two gases are generated. From each cell there are separate oxygen and hydrogen outlet pipes through which each gas, laden with some electrolyte, passes into its respective separating container. From each of the separating containers there are return pipes which extend into said tanks which are open to the atmosphere and from the bottom of which gas-free electrolyte descends into the cells. The cycling process may be repeated as often as desired. Refrigerating means (water jackets) for cooling the gases and electrolyte are provided on the separating containers.

The Primary Examiner pointed out that the structure of the patent discloses a bipolar electrolyzer comprising individual cells; two containers in one of which hydrogen is separated from the catholyte spaces of the cells and the other in which oxygen is separated from · the anolyte spaces; a conduit for each of the cells leading from both the anolyte and· catholyte spaces directly and independently into manifolds which lead directly into the container in which the hydrogen is separated; electrolyte conduits from each of said containers to the two said open tanks and a conduit for returning the electrolyte therefrom to the cells thus forming a hydraulic circuit from the cells into the separating containers and back again through the tanks into the cells.

The examiner stated: "It is apparent that if in applicant's device the electrolyte level of said vessel coacts with the said conduits to balance the electrolyte levels of said containers, for equalizing the gas pressures ·in the anode and cathode spaces of each of said cells during the operation of the electrolyzer (a functional amendment to the claim, since it is merely an expression of purpose), then the apparatus of Allan functions in the same manner, since the construction of Allan's apparatus is similar to the construction of applicant's apparatus."

Accordingly, he rejected the claim 10 as unpatentable over the Allan patent.

With respect to claim 11, the examiner held that the limitation of the "vessel thereof serving additionally as an electrolyte reservoir for those said cells." did not lend patentability to that claim for the reason that the atmospherically exposed tanks of the patent structure could obviously serve as an electrolyte reservoir.

In rejecting claims 12 and 13 the examiner held that there would be no invention in extending the outlets of the conduits below the liquid levels in and extending close to the bottoms of the separating containers in the patent structure because in his opinion such extension would be merely a mechanical expedient or matter of choice.

The examiner rejected claim 14 pointing out that refrigerating means were disclosed in the patent structure as water jackets on the separating tanks.

Claim 15 was rejected by the examiner for the reason that it would not require exercise of the inventive faculty to substitute pump means for gravity in the circulatory system of the patent structure.

In his rejection of claim 16 the examiner pointed out that the separating containers of the patent structure are elongated and also horizontally disposed in relation to the remainder of the apparatus.

The examiner rejected claim 17 for the same reasons he applied to the rejection of claim 10 stating that claim 17 differed from claim 10 only in calling broadly for means rather than conduits for conducting the. electrolyte.

He rejected claim 18 for the stated reason that the tanks in the patent structure through which the electrolyte is returned from the separating containers might obviously serve as an electrolyte reservoir and he· found no invention in supplying a pump means instead of gravity for flowing the liquid.

The Board of Appeals in its decision affirming that of the examiner, among other things, stated as follows: "Applicant's brief contains a lengthy specification of alleged differences between applicant's structure and that of the reference. It is noted, however, that these differences are not recited in the claims, at least not ·in the recitation of structure in the claims. There is, it is true, at the end of each of the principal claims 10, 16, 17, and 18 a lengthy recital of how applicant's device operates, but this does not follow from or depend upon any structure positively recited and cannot be relied upon to distinguish from Allan."

Appellant in his request for reconsideration, alleged that the foregoing quotation from the Board's decision was an opinion that there was invention in the case but that the claims were not properly constructed and sought to substitute other claims therefor and ·cancel the present claims. The board denied the request in the following language:

"It [applicant's request for reconsideration] does not allege error in our decision

and its substance merely proposes to cancel the appealed claims and substitute a new set of claims, alleging that we made a recommendation in our decision. We made no recommendation, and it is not our practice to consider new claims (Ex parte Moore, 1923 C.D. 13) which amount to a continuation of the prosecution.

"The petition has been considered but it is denied in respect to making any change in our decision."

Appellant again petitioned the board to remand the case to the Primary Examiner for consideration of the substituted claims. The board denied the petition in the following language:

"The petition to remand, filed March 21, 1945, is treated as a second petition for reconsideration.

"Applicant still argues that our decision of February 16, 1945, provides some sort of basis for the continued prosecution of the case by changing the claims present at the time of appeal. Ex parte Norlund, 1913 C.D. 161 decided that the mere mention in a decision on appeal that the claims lacked some feature stressed in the applicant's argument, did not confer a right to amend the claims to include such feature.

"As previously stated, ex [sic] parte Moore, 1923 C.D. 13 is authority for a refusal by the Board to consider new claims.

"We are without authority to remand the case to the examiner for what amounts to a reopening of the prosecution before the examiner, since this latter matter is entirely within the jurisdiction of the Commissioner."

The renewed petition is denied.

Thereafter appellant filed a petition to the commissioner requesting that the application be remanded to the examiner for action on the substituted claims. The petition was "disapproved."

We cannot agree with the contention of the appellant that the decision of the board expressed an opinion that invention resided in the case and think it is clear that no error was committed by the tribunals of the Patent Office in refusing to consider the claims sought to be substituted.

Appellant in his brief concedes that the structure of the patent and that of the application both disclose the same basic equipment by means of which the electrolyte cycle is accomplished in the production of hydrogen and oxygen. His contention is that the rejected claims define patentable structural improvements over the prior art and that, therefore, the reference is inapplicable.

The statements in the claims as to the manner in which the apparatus of appellant operates cannot be properly relied upon to patentably distinguish his structure from that of the Allan patent. They are functional and cannot be regarded as structural limitations or elements. In re Carr, 120 F.2d 386, 28 C.C.P.A., Patents, 1240; In re Lamb, 146 F.2d 277, 32 C.C.P.A., Patents, 799; Gynex Corporation et al. v. Dilex Institute of Feminine Hygiene, Inc., et al., 2 Cir., 85 F.2d 103; General Electric Co. v. Wabash Appliance Corp. et al., 304 U.S. 364, 58 S.Ct. 899, 82 L.Ed. 1402.

A careful comparison of the structure defined by the claims of the application with that of the patent convinces us that the tribunals of the Patent Office have committed no error.

We can see no patentable distinction between pipes leading from the cells directly and independently into the containers as called for in the claims and pipes from the cells connected to a header through which the gases from the cells are finally led by single pipes into the respective separating containers as shown in the patent apparatus.

Appellant contends that the tanks exposed to atmospheric pressure of the patent structure through which electrolyte passes on its return for recirculation are not part of the circulatory system but merely a by-pass or shunt through which gas leaves the fluid so that the returning electrolyte is gas-free. It is clear to us that the tanks are in the circulatory system and could well be used as a reservior containing electrolyte even as does the vessel defined in the claims.

As to the balancing of the electrolyte level in the separating containers, we can-

450

not say, because of the similar basic construction of the apparatus of the patent and that defined in the claims, that if the latter is adapted to accomplish said balancing, it would not likewise be accomplished in the device of the patent.

While the structure of the claims differs in some respects from those disclosed in the prior art, we are of the opinion that such difference is not sufficient to render the claims patentable. They are merely modifications obvious to those skilled in the art.

The decision appealed from is affirmed. Affirmed.