48 CCPA

### Application of Cecil BOLING and Alexander J. Tigges.
### Patent Appeal No. 6704.

United States Court of Customs and Patent Appeals.
July 12, 1961.

Miles D. Pillars, Washington, D. C. (Robert D. Spille, Harold L. Stults, and Curtis, Morris & Safford, New York City, of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Jack E. Armore, Washington, D. C. of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[1]

MARTIN, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the examiner's rejection of claims 4 and 6, the only claims of appellants' application for a patent on a heat exchange apparatus.

The appealed claims are as follows:

"4. In a heat exchange unit of the character described for cooling water wherein it is desirable to provide a high heat transfer relationship with the water and wherein the water may freeze and produce very substantial pressures upon the walls confining it during some conditions of operation, the combination of, a metal tube which has successive portions which are substantially parallel and spaced apart and are not closer than one-quarter inch from each other at any portion, said tube is adapted to withstand substantial hoop tension from within the passageway which it forms, and an enclosing block of cast aluminum forming a unitary wall structure wherein each tube portion is surrounded by a wall portion of at least one-quarter inch throughout, said block surrounding said tube and formed thereon by a casting operation with the molten metal being at a sufficiently low temperature to prevent material melting or dissolving of the metal forming the tube and with the metal forming the block shrinking after solidifying thereby to place the tube under substantial precompressive forces whereby the block establishes a high heat conductivity relationship with the tube which relationship is maintained throughout the normal range of operating temperatures during use of the unit, said tube expanding when internal forces of the order of 10,000 to 30,000 pounds per square inch are exerted in its passageway and to transmit hoop tension forces to the surrounding block wall and being placed under hoop tension whereby the tube and the block are loaded with hoop tension forces substantially simultaneously without exerting forces beyond the elastic limit of the tube or block wall portions.

"6. A heat exchange unit as described in Claim 4, wherein said tube is a helical coil and wherein said unit includes a second helical coil, said helical coils having their turns positioned alternately and substantially parallel throughout in evenly-spaced relationship, said block being of aluminum with a copper content not greater than the order of four per cent, and being generally cylindrical."

The references relied on by the examiner and the board are:

Sellick et al., 1,799,991, April 7, 1931

Mautsch, 1,989,996, Feb. 5, 1935

French Patent, 613,103, Aug. 13, 1926

The invention relates to apparatus intended for cooling water or other beverages. The embodiment described in the application comprises in pertinent part a pair of intertwined helical coils of copper or stainless steel tubing embedded in a hollow cylindrical casting of aluminum. It is contemplated that the beverage would be passed through one coil and a refrigerant through the other coil. The aluminum block would act as a heat transfer medium.

1. United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

It is specified that the two coils be of the same diameter and pitch with turns of both coils positioned alternately and parallel in evenly spaced relationship. The preferred dimensions are coil tubing of one-quarter inch outside diameter, coil turns spaced with tubing centers five-eighths inch apart, and an aluminum cylinder wall three-quarters inch thick so that each tube is surrounded by a wall of aluminum at least one-quarter inch thick.

Appellants specify that the heat exchanger be fabricated by positioning the two coils in a cylindrical mold and filling the mold with molten aluminum at such temperature [1] that the tube coils, if made of copper, will not be melted, or dissolved or alloyed into the aluminum. Appellant appears to consider this mode of manufacture an essential feature of the invention because when the molten aluminum solidifies, it is said to shrink tightly against the embedded tube coils and compress each tube to a slightly smaller diameter. It is contemplated that during use, water may accidently freeze in the beverage tube. The internal pressure exerted by the resulting ice would place the tube walls under considerable "hoop tension." [2] It is expected, however, that the tube coil would not burst and crack the block because both precompressed tube coil and aluminum block would work together in restraining the internal forces. This particular aspect of appellants' invention seems to be summarized by the following statement in the application:

"* * * The block has the property of shrinking the proper amount [during casting] to produce the desired precompression of the tube, and then when the stresses [i. e., hoop tension] are increased during

the freezing of the water the block picks up its share of the load and works with the tube in restraining the forces involved. * * *"

Appealed claim 4 is somewhat broader than the illustrative embodiment just discussed in that only a single metal tube of unspecified diameter is recited and only minimum permissible tube spacing and block wall dimensions are specified. Appealed claim 6, which is dependent from appealed claim 4, recites a helical coil structure for the metal tube and a second helical coil as in the illustrative embodiment, and specifies use of aluminum with a particular maximum copper content.

The French patent discloses a heat exchanger comprising a pair of intertwined helical coils of metal tubing embedded in a mass of aluminum in the form of a hollow cylinder or ring. The drawing which is part of the French patent shows a device which appears to be substantially the same as that shown in appellants' drawing.

The Sellick et al. patent discloses refrigerating apparatus which comprises a copper refrigerant coil embedded in an aluminum casting, and was relied on by the examiner and the board because of the following sentences therein:

"* * * We have found, however, that, when working with certain metals, such for example, as copper and aluminum, the tubes being of copper and the casting of aluminum, there is a tendency for the copper coils to dissolve in the aluminum when the latter is in its molten state. This is true even though the melting point of aluminum is 658° and that of copper is 1083° C."

1. Specific desirable temperatures are not disclosed.

2. As used in this case, "hoop tension" seems to have two connotations, one as here related which represents appellants' meaning and another as interpreted by the board and by counsel for both the Patent Office and appellant. The latter

meaning seems to be the pressure on the tubes caused by the contraction of the molten aluminum when it solidifies. Webster's New International Dictionary, 2d ed., 1949, defines "hoop tension" as follows: "*Mech.* The circumferential tension in a shell or in any thin concentric element of a thick-walled solid of revolution subjected to pressure."

Sellick et al. suggest solving this problem by plating the copper coil with a metal of higher melting point, for example, nickel or chromium.

Mautsch discloses "headers of tubular heat exchange apparatuses." Such devices are used as connectors between thin metal tubes and other parts of a heat exchanger. According to Mautsch, a header is to be constructed by inserting various tube ends including those of thin copper tubes into the walls of a header-box fabricated of thin metal. The whole structure serves as a casting core around which molten metal such as an aluminum alloy is subsequently poured. When the aluminum solidifies, it shrinks and grips the walls of the tubes and box tightly together.

The claims stand rejected as being indefinite and as being unpatentable over the French patent in view of Mautsch and Sellick et al.

With regard to the first ground of rejection, the board stated:

"However, we agree with the examiner that the claims are indefinite on the ground that the disclosure is vague and insufficient with respect to the temperatures employed, namely, for the recitation in the parent claim 4 'with the molten metal being at a sufficiently low temperature to prevent material melting or dissolving of the metal forming the tube.'

"While the melting temperature of known metals, such as copper, is a matter of handbook information and thus within the skill of the routineer, the temperature and conditions at which such metals would dissolve in aluminum is not apparent to us from the record before us. We note, moreover, the statement in appellants' specification, on page 11, that stainless steel does not dissolve in aluminum, and thus the recitation in question does not apply to tubes formed of stainless steel, which is not excluded from the present claims. * * *"

After then referring to the portion of the Sellick et al. patent, quoted supra, as a teaching that copper will begin to dissolve in aluminum at the latter's melting point, the board continued:

"Since casting of aluminum, or any other metal, cannot be performed at a temperature below its melting point, and since the prior art indicates that copper tends to dissolve in aluminum at its melting temperature, appellants' failure to disclose in this case the temperature intended renders appellants' claims and specification vague and indefinite. Manifestly, the 'low temperature' recitation in the claims cannot have any significance with respect to stainless steel tubes of which the tubes of the claims at bar may be formed.

"In the light of the foregoing, we must sustain the rejection of the claims as being indefinite."

With regard to the rejection based on prior art, the board was of the opinion that the heat exchanger of the French patent was formed by casting the aluminum block around the metal tube coils "since it would be virtually impossible to form it by any other way except casting." After noting that Mautsch teaches shrinkage of aluminum during casting "as well as utilization of that feature for applying hoop compression to a tube, by an aluminum block cast thereon," the board held that the characteristics relating to block shrinkage which are recited in the appealed claims would be inherent in the French patent heat exchanger.

As to certain other claim limitations, the board stated in part:

"The minimum one-quarter inch spacing of the successive portions of the tube and of the thickness of the aluminum wall portions around the tube does not appear to us to be critical, and we thus agree with the examiner. It would appear also that such dimension should be true in the French patent exchanger. But, be

that as it may, the size of the tube and the thickness of its walls are deemed essential in determining the amount of the hoop compression on the tubes by the recited surrounding aluminum wall, neither of which is claimed or disclosed in this application. Accordingly, we cannot attach any patentable significance to said dimensions. The operation recited in the last seven lines of basic claim 4, as it appears in the brief, cannot be accorded any patentable weight. In re Bisley, 39 CCPA 982, 1952 C.D. 298, 665 O.G. 639, 197 F. (2d) 355, 94 USPQ 80; In re Storsand, 34 CCPA 835, 1947 C.D. 169 (173), 597 O.G. 602, 159 F.(2d) 446, 72 USPQ 438."

The board considered the casting temperature limitation in claim 4 to be without patentable significance for reasons discussed supra in the rejection on the grounds of indefiniteness, and further because "it is a common and notoriously known practice to keep casting temperatures as low as possible to prevent damage to the materials involved."

The limitation in claim 6 as to the copper content of the aluminum block was considered by the board to be without patentable merit and "but a matter of choice" since when stainless steel tube coils are used, the function of the copper in the aluminum is merely "improvement in the texture of the casting, namely its appearance," and the tube material is not specified in either of the appealed claims.

We agree with the board that the appealed claims are not patentable over the prior art. Appellants' basic structure is disclosed in the French patent. The pertinent part of that patent reads as follows:

"This apparatus is characterized by at least two conduits through one of which the fluid to be cooled flows, and through the other, the fluid to be heated; said conduits being arranged in the mass of a metal that is very good heat conductor, for example *aluminum.*

"A particularly advantageous embodiment is characterized in that the conduits are tubes encased or embedded in the mass of the conductive metal. The tubes are preferably rolled into helixes, in order to form in a way the threads of a multiple thread screw, and are encased in the mass of a metallic ring of the smallest possible thickness, in order to reduce losses by radiation." [3] (Emphasis ours.)

Appellants maintain that their structure is patentably distinguishable from that of this French patent because the patent does not contain a disclosure that the aluminum is cast. We believe this position untenable for the reason that, to one skilled in the art, the obvious way to construct the French device would be in this manner, in view of the teaching that "said conduits being arranged in the *mass* of metal * * *" (emphasis ours) and that the "tubes [are] encased or embedded in the *mass* of the conductive metal * * *." (Emphasis ours.)

Appellants contend that the French patent must be construed strictly and if this is done it will not qualify

---

3. The record contains the French patent in English translation. According to an unofficial copy of the original patent supplied by appellant at oral argument, these sentences in French are:

"Cet appareil se caractérise par au moins deux canalisations, dont l'une est traversée par le fluide à refroidir, et l'autre par le fluide à réchauffer; ces canalisations étant ménagées dans une masse d'un métal très bon conducteur de la chaleur, tel que l'aluminium par exemple.

"Une forme d'exécution plus particulièrement avantageuse se caractérise en ce que les canalisations sont des tubes enrobés ou noyés dans la masse de métal conducteur. De préférence, les tubes sont enroulés en hélices, de manière à former en quelque sorte les filets d'une vis à plusieurs filets, et ils sont enrobés dans la masse d'un anneau métallique de l'épaisseur la plus faible possible, pour réduire les pertes par rayonnement. * * *"

here as a reference. We stated in In re Moreton, 288 F.2d 708, 711, 48 CCPA 875, which involved a French patent, that:

"Appellant further attempts to disparage the value of the French patent as a reference on the ground that it is a 'foreign patent,' and is good 'for only what it clearly and definitely discloses.' That statement is true with respect to any reference, patent or otherwise, foreign or domestic. There is no basis in the statute (35 U.S.C. 102 or 35 U.S.C. 103) for discriminating either in favor of or against prior art references on the basis of nationality. We do know that some opinions have looked askance at foreign patents but that is for the reason that the patents of some countries have been nortorious for containing inadequate and incomplete disclosures. A consideration of cases will show that this type of argument has not borne fruit in this court for the past 30 years. See In re Cross, 62 F.2d 182, 20 CCPA 710; In re Crowley, 74 F.2d 753, 22 CCPA 881, and In re Eitzen, 86 F.2d 411, 24 CCPA 772."

Since the Sellick patent teaches that there is a tendency for copper tubes to dissolve in molten aluminum, appellants' recitation that the "casting operation" should be "at a sufficiently low temperature to prevent material melting or dissolving" adds nothing of patentable significance to this art since it would be obvious to one skilled in this art with the teaching of Sellick et al. before him to use the lowest temperature possible in the casting operation to avoid dissolving any other metal involved.

Further, we find nothing of patentable significance in the feature of the precompression of the tube which is caused by the contraction of the molten aluminum upon solidification. It is said that this process will produce "hoop tension" forces that will avert the bursting of the tube. First of all, it appears to us that this variety of "hoop tension" is inherent in the French patent when the aluminum is cast around the tubes. Also, the Mautsch patent discloses that tubes which are encased in cast metal will become gripped by the shrunken metal and, as a matter of fact, it warns that the walls of the tubes are apt to collapse unless reinforced.

In this regard the Mautsch patent states:

"In the constructional embodiment shown in Fig. 2, the ends of tubes 2 are smooth, devoid of any reinforcement, and are gripped in the metal of casing 3 solely by the pressure of said mel 1 due to the shrinkage thereof after casting. When said tubes are thin, as is usually the case, their ends are preferably reinforced by means of an inner liner 5 (Fig. 3) adapted to prevent the collapse of the side wall of said tubes under the pressure set up by the shrinkage of the cast metal, and thus to assist in providing a solid anchorage for the tube ends. The strength of said anchorage may further be enhanced by shrinking upon the tube ends a ring of comparatively large diameter 6 (Fig. 4), adapted to resist still better the shrinkage stresses of casting 3 and to provide a joint the tightness of which is all the greater that said stresses act upon a large diameter. * * *"

There is no question but that the physical cause and effect in the premises is completely revealed in the above statement. We do not think that appellants have contributed anything of patentable significance by injecting such terms as "hoop tension" into the situation to explain what is the natural effect of this disclosure or to describe a result which, although new, would not be unexpected in view of the prior art. In re Kepler, 132 F.2d 130, 30 CCPA 726; In re Bourdon, 240 F.2d 358, 44 CCPA 740. Regardless of whether "hoop tension" means the internal pressure in the tubes created by the ice or the external pressure on the tubes caused by the shrinkage of the molten aluminum around the tubes, the inventive concept, if any, is

found in the teaching of an embodiment which will avoid the bursting of the tube. However, this concept is inherent in the French patent and also is found in the teachings of the Mautsch patent.

◼ Appellants also rely on the terminal portion of claim 4[4] as a basis for the allowance of that claim. These lines merely describe the desired results by the use of the device and cannot in and of themselves impart patentability to the claim. In re Storsand, 159 F.2d 446, 34 CCPA 835; In re Bisley, 197 F.2d 355, 39 CCPA 982.

◼ We come now to the specific dimensions which are set forth in claim 4. We find that these limitations are neither claimed to be critical by appellants nor, according to our view, are they critical. No relationship is established between the minimum one-quarter inch spacing of the successive portions of the tube or the one-quarter inch thickness of

the aluminum wall portion around the tube and the described features such as the precompression of the tubes or the "hoop tension" element. No other reasons have been given for these specific dimensions and we know of none.

As to the copper content in the aluminum casting which is recited in claim 6, since the claim states "with a copper content not greater than the order of four per cent" this could mean no copper content at all, which would then make the claim read upon the French patent. Therefore this recitation does not impart patentability to the claim.

For the reasons given above we *affirm* the decision of the board as to the unpatentability of the appealed claims over the prior art. Holding as we do, we deem it unnecessary to consider the rejection of the claims on the ground of indefiniteness.

Affirmed.

---

4. " * * * said tube expanding when internal forces of the order of 10,000 to 30,000 pounds per square inch are exerted in its passageway and to transmit hoop tension forces to the surrounding block wall and being placed under hoop tension whereby the tube and the block are loaded with hoop tension forces substantially simultaneously without exerting forces beyond the elastic limit of the tube or block wall portions."