**Application of Daniel C. SKONER et al.**

**Patent Appeal No. 75–551.**

United States Court of Customs and Patent Appeals.

June 12, 1975.

Gerald K. White, Thaddeus A. Zalenski, Pittsburgh, Pa., for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Henry W. Tarring, II, Washington, D. C., of counsel.

Before MARKEY, *Chief Judge,* and RICH, BALDWIN, LANE and MILLER, *Associate Judges.*

BALDWIN, Judge.

This appeal is from the decision of the Patent and Trademark Office Board of Appeals affirming the rejection of claims 1–5 in application serial No. 144,567, filed May 17, 1971, for a "Method of Coating Ferrous Substrates With Zinc Vapor."[1] We affirm.

### The Invention

Appellants' invention relates to a method for providing adherent vapor-deposited zinc coatings on ferrous substrates in a vacuum. Appellants have found that good adhesion of zinc to a ferrous substrate, particularly in a high speed, continuous coating process, can be obtained by wire brushing the substrate surface to a critical degree, without the necessity of employing processing temperatures resulting in substantial alloying of the iron and zinc or re-evaporation of the zinc. The degree of wire brushing which is required must be sufficient to not only remove the oxide layer present on the substrate, but severe enough to make the substrate rough on a micro-scale so that it will exhibit low specular reflectivity with a dull appearance to the unaided eye. Appellants have further found that wire brushing, if not carried out with sufficient severity, will merely remove the surface oxide layer and polish the substrate surface. This polished condition, according to appellants, is "inimical to good zinc adhesion."

Claims 1 and 4 are illustrative:

1. A method of providing an adherent zinc coating on a ferrous substrate comprising passing said substrate into an evacuated chamber having a pressure less than about $10^{-3}$ torr, wire brushing said substrate in said cham-

1. This application is a continuation-in-part of application serial No. 741,012, filed June 28, 1968.

ber with sufficient severity to remove any oxide layer present on the substrate area to be coated and to abrade the surface of the substrate to cause the surface to be rough on a microscale, exhibit low specular reflectivity, and have a dull appearance to an unaided eye, and vapor depositing zinc onto the brushed surface of the substrate.

4. A method of providing an adherent zinc coating on a ferrous substrate comprising passing said substrate into an evacuated chamber having a pressure less than about $10^{-3}$ torr, wire brushing said substrate, monitoring the reflectivity of the brushed substrate surface, and when the monitored reflectivity indicates that the brushed surface is in a polished condition predictive of resulting poor zinc adhesion increasing the severity of the wire brushing operation sufficiently to remove any oxide layer present on the substrate area to be coated and to abrade the surface of the substrate to cause the surface to be rough on a microscale, exhibit low specular reflectivity, and have a dull appearance to an unaided eye, and thereafter vapor depositing zinc onto the substrate brushed surface.

Claims 3 and 5 recite the additional step of cleaning the substrate of contaminants which, if not removed, cause polishing of the substrate through wire brushing.

### The Rejection

The examiner rejected claims 1–5 under 35 U.S.C. § 103 as being unpatentable over Baer et al., U.S. Patent No. 3,012,904. Baer et al. relate to coating of the type wherein a metal such as aluminum or zinc is vaporized in a vacuum and condensed on a metallic surface. Baer et al. teach that in order to obtain a strong adherent bond between a thick vapor-coated layer and base, "the oxide coating plus other surface contaminants must be removed as completely as possible prior to coating." This is taught to be accomplished by abrasive means such as grit or sandblasting, rotating flexible contour-conforming abrasive flaps, wire brushing, abrasive wheels, and roughened surfaces such as sandpaper, or by milling or machining.

It was thus the examiner's position, as expressed in his answer, that:

[I]f there is any difference in the degree of roughening encompassed by Baer et al. and that defined in the appealed claims it is a difference of degree and not of kind. It is the Examiner's opinion that it would involve merely routine experimentation to determine the optimum degree of wire brushing and abrading which would prepare the Baer et al. ferrous substrate for the "strongly adherent, dense metal coatings" * * *.

Claims 4 and 5 call for "monitoring the reflectivity of the brushed substrate surface." Although Baer et al. do not recite such a feature, the examiner continued:

It is considered to be obvious to one of ordinary skill in this art to monitor the condition of the substrate to ensure that the proper amount of brushing has resulted because * * * in order to assure that all oxide coating is removed from the substrate, severe abrading is necessary and this would inherently produce a surface with low reflectivity.

The board affirmed the examiner's rejection notwithstanding its observation that "[t]he reference does not disclose that the metal substrate is roughened on a microscale, exhibits low specular reflectivity or has a dull appearance to the unaided eye."

With regard to the rejection of claims 1–3, the board based its decision on three grounds. First, it is unrealistic to assume that Baer et al. merely removes the oxide coating by light brushing, which would only polish the substrate surface, "since it would appear that such an operation would require careful control of the abrasion conditions and the reference makes no mention of such con-

ditions or indicates anywhere that the surface of the metal substrate is polished." Second, "the reference disclosure indicates that wire brushing is equivalent to abrasive papers, abrasive wheels, sand blasting or cutters, the use of which would hardly polish the surface." Third, the board felt that "[t]he use of a roughened surface to improve adhesion is elementary in the coating art and * * * Baer et al. in their process obviously produce such a roughened surface."

Addressing itself to the rejection of claims 4 and 5, the board agreed with the examiner that it would be obvious to monitor a surface to ensure proper brushing while adding that "a low reflectivity would be inherently obtained by the process [of Baer et al.]."

In appellants' request for reconsideration, it was asserted that the board raised a new ground of rejection by placing emphasis upon the equivalency of the various surface preparation techniques disclosed by Baer et al. To rebut the board's position, a Rule 132 affidavit was filed. The affiant concluded that neither an abrasive brush nor sandpaper is equivalent to a wire brush as a surface preparation means. The affiant further concluded that inferior adhesion was obtained when wire brushing was performed under a "nonoxidizing" gaseous atmosphere compared to wire brushing in a vacuum.

In response to the above-described affidavit, the board responded in its denial of appellants' petition for reconsideration:

[W]e do not believe that differences in adhesion produced by the various abrasion methods disclosed by Baer et al. would tend to prove that Baer et al. merely polish when they call for wire brushing rather than roughen on a microscale. The determination of the degree to which the surface should be abraded in the Baer et al. process, including wire brushing, to achieve optimum abrasion, and the monitoring of that process would be within the skill of the art.

*Opinion*

As stated previously, appellants' Rule 132 affidavit was submitted in response to the board's emphasis placed upon the equivalency of various surface preparation techniques disclosed by Baer et al. As will be seen from the following discussion, we find it unnecessary in our affirmance of the rejection of claims 1–3 under 35 U.S.C. § 103 to so equate the various surface abrading techniques of the reference. Therefore, further discussion of appellants' affidavit is unnecessary.

Baer et al. vacuum deposit metals such as aluminum and zinc on a substrate such as steel. Wire brushing a steel surface is one technique employed by the patentees to improve adhesion between the vapor-deposited metal and the substrate. Without refuting this, appellants assert that if the wire brush abrasion is not carried out with sufficient severity only oxide will be removed from the steel surface and a polished condition will result which is "inimical to good zinc adhesion."

Baer et al. wire brush their substrate to *improve* adhesion. It defies logic to assume that the patentees would abrade only to such an extent as to be "inimical to good zinc adhesion." As stated in the Baer et al. specification:

A principal object of the present invention is to provide a vapor deposition coating process for producing thick, dense, *strongly adherent metallic coatings on metallic surfaces* which are susceptible to oxidation. [Emphasis added.]

█ Furthermore, in Example II of Baer et al., the patentees coat a cold-rolled steel substrate with aluminum in a vacuum. Only part of the substrate is pretreated by a wire brush so that adhesion between the aluminum and steel layers could be compared in the abraded and non-abraded areas. The patentees conclude:

Adhesion of the aluminum to the wire brushed area was excellent. The coating was bright in appearance and had

a columnar structure. Adhesion of this thick coating on the unbrushed area was poor and could be readily peeled off. Thus much better bonding was obtained by use of heat and wire brushing under vacuum in comparison to heat alone.

Thus, we find the use of wire brushing to abrade a ferrous substrate to improve adhesion between the substrate and a vapor-deposited metallic coating would have been obvious. Expected beneficial results are evidence of obviousness of a claimed invention, just as unexpected beneficial results are evidence of unobviousness. *In re Gershon*, 372 F.2d 535, 54 CCPA 1066 (1967).

Appellants have chosen to describe their invention in terms of certain physical characteristics of the roughened substrate surface. They couch their claims in terms of the abraded surface being rough on a microscale, exhibiting low specular reflectivity and having a dull appearance. Merely choosing to describe their invention in this manner does not render patentable their method which is clearly obvious in view of Baer et al. See *In re Boling*, 292 F.2d 306, 48 CCPA 1050 (1961).

 Appellants note that the reference patent is silent in describing the extent of wire brushing and therefore assert that the conclusion reached by the examiner that Baer et al. abrade to the extent claimed must be based upon inherency. Appellants continue that inherency is only proper with regard to a § 102 rejection which is not present here. We realize that the examiner could not possibly have the opportunity to compare the extent of abrasion between appellants' wire brushing and that of the reference. The amount of abrasion depends upon, among other things, the speed of the wire brush and ferrous substrate, pressure of the brush against the substrate, coarseness of the brush bristles and strength of the wire brush motor. Thus, the examiner could only note that the patentees were using identical means (i. e., wire brushing) in an attempt to achieve identical results (i. e., improved

adhesion) to those of appellants in order to establish a prima facie case of obviousness. Perhaps the rejection should have been founded upon § 102 instead of § 103. However, this court has sanctioned the practice of nominally basing rejections on § 103 when, in fact, the actual ground of rejection is that the claims are anticipated by the prior art. The justification for this sanction is that a lack of novelty in the claimed subject matter, e. g., as evidenced by a complete disclosure of the invention in the prior art, is the "ultimate or epitome of obviousness." *In re Kalm*, 378 F.2d 959, 962, 54 CCPA 1466, 1470 (1967); *In re Pearson*, 494 F.2d 1399, 1402, (CCPA 1974). Therefore, we agree with the examiner that the extent of abrasion carried out by Baer et al. can be considered inherently the same as that of appellants. See *In re Gershon*, supra. Any other result would permit the allowance of claims drawn to unpatentable subject matter merely through the employment of descriptive language not chosen by the prior art.

We further find that claims 4 and 5 would have been obvious in view of Baer et al. We agree with the solicitor that selection of surface reflectivity as the monitored parameter of the substrate surface would be obvious since this is merely a visible property.

Claim 4 requires that *after* the monitoring step, if the monitored reflectivity indicates that the brushed surface is in a polished condition, the severity of the wire brushing is increased to, *inter alia*, remove any oxide layer present on the substrate surface to be coated. Baer et al. disclose that the oxide coating must be removed as completely as possible. We see nothing unobvious about watching or observing the brushed surface to determine whether the brushing is sufficient.

With regard to claims 1–3, we have held that it is obvious to cause the surface to exhibit low specular reflectivity, and have a dull appearance to an unaided eye. Observing such a transforma-

tion would be obvious; indeed, it could hardly be avoided.

As found by the board, it is elementary that roughening improves adhesion. It is also elementary that a smooth, highly reflective surface is less adhering than a surface that is dull due to minute irregularities. Hence, it would be obvious to monitor the reflectivity of the surface until the surface becomes dull in order to improve adhesion. It may well be that monitoring the reflectivity of the brushed substrate surface is an advantageous expedient in determining whether the substrate has been roughened to the desired degree; yet this does not necessarily mean that monitoring the reflectivity of the substrate surface would be unobvious. See *In re Fulton*, 384 F.2d 1014, 55 CCPA 705 (1967).

Accordingly, the decision of the board is affirmed.

Affirmed.

