47 CCPA

### Application of Jacob G. BRAUN.
### Patent Appeal No. 6524.

United States Court of Customs and Patent Appeals.

March 8, 1960.

1. United States District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge

Horton, Davis & McCabeb, Chicago, Ill. (James A. Davis and Lawrence W. Brugman, Chicago, Ill., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Com. of Patents.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge FRANCIS L. VAN DUSEN.[1]

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, one board member dissenting with opinion, affirming the examiner's rejection of appellant's application, Serial No. D–39,-249, filed December 9, 1955, for "Ornamental Iron Work."

The rejection was based on unpatentability over the prior art as shown by a single reference, Sweet's Architectural File, 1954, Section 5e, sub-section Fi, page 5, design 75. This page is a collec-

O'CONNELL, pursuant to provisions of Section 292(d), Title 28 United States Code.

tion of illustrations of products of the J. W. Fiske Iron Works which are of the type used on house fronts and porches to frame doorways and support porch roofs, products which appear to be known in this art as "Treillages."

The literal translation of the French word "treillage" is trellis but the word also seems to have been adopted into the English language as a synonym of trellis. Both words are defined in the dictionary as a latticework for vines but what we have before us is iron latticework in the form of conventionalized vines, to which the term "treillage" seems to have been appropriated to such an extent that the examiner requested appellant to change the title and claim of his application from ornamental iron work to treillage, as being more specific. This he did.

Little as we know about the treillage art, the single reference contains a sufficient number of specimens to make it clear that treillages have certain characteristics in common. They may be one or two stories high. The uprights or pilasters are in the form of narrow panels from 7 to 30 inches wide, commonly about a foot wide. A top member in the form of a frieze or transom is usually employed which may be the same as the pilasters or of a different but harmonious design. Commonly a treillage is constructed with parallel square iron bar framing members about an inch thick which form the side edges or borders of the pilasters and transom, the inner members extending across to the outer members so as to form a square frame at the corners where the parallel members intersect. A decorative corner bracket may be used, as in the case here, to fill in the two upper inside corners of the complete treillage, producing an arched effect.

In both appellant's design and the reference the total design consists of three elements which are applied to the rectilinear frame members which, though they contribute to the overall appearance, appellant says are conventional in treillages and no part of his invention. The first design element is the piece which occupies the square corner section. The second element is the corner bracket designed to occupy a generally triangular area at the junction of a pilaster and the transom. The third element, which may be repeated as often as may be necessary to fill up the space between the pilaster and transom frame members, according to how long they are, is a section whose length is perhaps two and a half times one of the sides of the corner piece and of the same width as the corner piece. Thus the design in a complete pilaster will consist of a number of repeats after the manner of wallpaper or textile designs. These elements are three-dimensional, generally flat, and have the same appearance when viewed from front or back.

Appellant's design is based on the wisteria vine and is made up of somewhat circular loops of vine stem, with two simulations of blossoms to each repeat, and a number of leaves which are of the compound variety typical of leguminous plants, so appellant's brief says. In any event, there are numerous pairs of small leaves on each leaf stem with another small leaf at the tip and these compound leaves are interspersed with the vine loops and the blossoms to form an attractive pattern. The corner and bracket designs are similar and in keeping with the general theme. Further written description would be no more informative of what the design actually looks like than the program notes of a symphony are descriptive of the sound of the music.

The single reference shows a treillage of the same general kind, having the same arrangement of frame members filled up in the same general way with elements whose design is based on the grape vine, including looped vine and tendril elements, bunches of grapes and large single grape leaves.

However, we give no significance to the fact that appellant's design and the prior art are based on different plants except in so far as this fact results in a difference of appearance.

On the issue of patentability, the examiner's negative ruling was based on his personal view that the "general overall appearance" of the appellant's design was quite similar to the reference and that there were insufficient differences to support a patent. The majority of the board, while phrasing its views in different words, was of the same opinion. It did add, as a matter of law, the following:

"It is well settled, however, that mere differences in appearance from designs previously produced are not inventive. * * * It is the design as a whole rather than the details thereof which must be viewed to determine if the design is patentable."

The first sentence we do not find very helpful, for if one design is patentable over another it must be by virtue of "differences in appearance." With the second sentence we are in full agreement. The dissenting board member said,

"I believe that it requires no searching comparison of the designs in question to realize that they are quite different and far from suggestive of one another."

He amplified his views, going into detail as to the differences existing in each element over the prior art and expressing the view that the design as a whole was "original in spite of the fact that it bears a superficial resemblance to the design of the reference."

█ █ █ We agree with the following astute passage in appellant's brief:

"There is little which can be said about this case from the standpoint of application of legal precedents. The ultimate result must rest upon the conclusion of an individual as to sameness of appearance as between the design of the application and the design of the single reference."

And with this from the Patent Office solicitor's brief:

"To entitle appellant to a patent, the differences between his design and that of the reference must be such that they would not have been obvious to a normally skilled designer of ornamental iron work, 35 U. S.C. Section 103."

Speaking for the majority of this court, we are of the opinion that the disclosure of the reference, combined with ordinary ornamental iron work designing skill, would not result in appellant's design as the obvious outcome. If our ratiocination be demanded, it is quite simple—the two designs do not look enough alike to make us think so. It might be said, and we would agree, that they are of the same general class, the product of what, for want of a better name, we shall call the twisted vine school of iron work art. Nevertheless, we get from appellant's design an impression distinctly different from the one the reference makes on us. We see no aping here, or mere development. Something from the creativity of the artist impinges itself on our consciousness which we are unable to equate with the concept of obviousness. The resulting article of manufacture is a different thing from the treillage of the reference to an extent which makes us feel sure purchasers would choose between them on the basis of different emotional responses to what they behold. If this is so, then the treillage art has been enriched and the design merits the patent protection which is sought.

The decision of the board is reversed.

Reversed.

MARTIN, Judge, with whom WORLEY, Chief Judge, joins (dissenting).

I agree with the majority that both the claimed and the reference designs have three common elements. However, I do not see a sufficient difference in the overall appearance of appellant's design to satisfy me that it is patentable over the cited prior art. I would affirm the decision of the Board of Appeals.