**Application of Jaap E. NABER and Fritz M. Dautzenberg.**

**Patent Appeal No. 9192.**

United States Court of Customs and Patent Appeals.

April 25, 1974.

Leonard P. Miller, Houston, Tex., attorney of record, for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents. Robert D. Edmonds, Washington, D. C., of counsel.

MILLER, Judge.

This is an appeal from the decision by the Patent Office Board of Appeals affirming the examiner's rejection under 35 U.S.C. § 103 of claims 1–6, 8–10, 12, and 13—all the claims in application serial No. 842,025, filed July 15, 1969, for "Process for Regeneration of Sulfur Oxide Acceptors." We reverse.

### THE INVENTION

Sulfur oxides are removed from gas mixtures, such as flue gases and gases originating from roasting processes, by contact with metal or metal oxide acceptors, such as copper or copper oxide, on a refractory carrier material (e. g., alumina). During contact, sulfur oxides are accepted by the copper or copper oxide, so that the purified gases, if discharged via a stack, cause substantially no air pollution. The copper sulfate formed during acceptance may be subsequently decomposed by means of a reducing gas, the result being a regenerated acceptor and a sulfur dioxide-rich gas, which can be used, for example, to produce elemental sulfur or sulfuric acid. The regenerated acceptor can then be reused to purify a further quantity of gas containing sulfur oxides.

Suitable reducing gases for regenerating such supported metal acceptors in-

clude hydrogen, carbon monoxide, and methane. Higher molecular weight hydrocarbons, such as propane and butane, can also be used as the reducing gas; however, according to appellants, these form combustible deposits on the acceptor during the regeneration process. The combustible deposits are undesirable since their combustion during use of the regenerated acceptor causes a significant increase in temperature which adversely affects the acceptor life. *The primary objective of the invention is to provide a process in which only minor quantities of combustible material are deposited on the acceptor.*

The combustible deposits can be significantly decreased if the higher molecular weight hydrocarbon reducing gas is mixed with an inert diluent, such as steam, in a volume ratio to the hydrocarbon of 0.2:1 to 20:1. This decrease is demonstrated in appellants' specification by the reduced temperature increase during reuse following regeneration with the claimed diluted hydrocarbons compared to that which occurred when regeneration was effected with undiluted hydrocarbons.

In addition, it is disclosed that the inert diluent has no appreciable effect on the amount of hydrocarbon required for regeneration of metal acceptors so that the regeneration rate (based on the sulfur dioxide content of the spent reducing gas) for undiluted hydrocarbons and the claimed diluted hydrocarbons is substantially the same.

Claim 1 is representative:

1. A process for the regeneration of a sulfur oxide-loaded acceptor obtained by contacting a sulfur oxide- and oxygen-containing gas mixture with a solid acceptor of a solid refractory carrier material composited with a metal or a metal compound capable of taking up sulfur oxides, which comprises treating said loaded acceptor at a temperature of 200°C to 500°C with a reducing gas comprising an inert diluent and a hydrocarbon in a volume ratio of 0.2:1 to 20:1, said hydrocarbon having at least three carbon atoms per molecule; and removing a sulfur dioxide-containing spent reducing gas.

## OPINION

The referenced patent to Van Helden et al. (Van Helden)[1] discloses a *metal* acceptor regeneration process employing a hydrocarbon reducing gas, such as propane or butane. *There is no indication that combustible deposits are encountered when employing such heavier hydrocarbon reducing gases as propane or butane.* Although not expressly disclosed, a small portion of inert diluent (steam) will necessarily be present during regeneration as a result of the disclosed partial combustion of the reducing gas.[2] Herein lies a critical difference from the claimed invention which expressly requires a higher amount of inert diluent (steam) to be mixed with the reducing gas.

The referenced British patent[3] discloses a regeneration process for *carbon* acceptors employing a lower aliphatic hydrocarbon reducing gas, such as methane. It is stated that the addition of 1% by weight of steam raises the regeneration rate; that test data show addition of about 10% trebles the regeneration rate. The steam may be generated in situ by partial combustion of the reducing gas or added as such.

The position of the Patent Office is that one of ordinary skill in the art at the time appellants' invention was made

---

1. U.S. Patent 3,501,897, issued March 24, 1970, on an application filed November 20, 1967.

2. The precise amount of the steam present in Van Helden is not clear from the record, but it was tacitly assumed below that it is considerably lower than the claimed minimum of inert diluent which, in a volume ratio to the hydrocarbon of 0.2:1, is approximately 16.6%.

3. No. 1,045,610, published October 12, 1966. Other references were cited by the Patent Office to justify the rejection, but their consideration is unnecessary since they are merely cumulative.

would be led to such invention by adding steam, as taught by the British patent (carbon acceptors) to the regeneration process of Van Helden (metal acceptors) *in order to increase the rate of regeneration,* sulfur compounds being reduced during regeneration in both processes. Although this court has referred to a similar combination of references as a "prima facie case," [4] we believe it more precise here to say that the differences between carbon acceptors, which operate by a process of physical absorption and are regenerated by a process of desorption, and metal acceptors, which utilize a chemical reaction during both the accepting and regenerating phases, is such as to cast doubt on the Patent Office position. As in the case of so-called "secondary considerations," such as commercial success and superior results, *all* evidence before the Patent Office is to be considered in resolving that doubt. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L. Ed.2d 545 (1966); In re Tiffin, 443 F. 2d 394, 58 CCPA 1277 (1971); In re Lindell, 385 F.2d 453, 55 CCPA 707 (1967).

It is to be noted that the only motivation presented by the Patent Office, and the only one readily apparent, for modifying Van Helden according to the teachings of the British patent is the latter's demonstration of an increased regeneration rate accompanying an increase in the amount of steam. However, the evidence in appellants' specification, namely, data which show that use of steam has no appreciable effect on the rate of regeneration of *metal* acceptors, demonstrates that the motivation advanced by the Patent Office is misplaced.

Morever, the record contains no evidence that those skilled in the art were aware of the problem of combustible deposits, the solution to which is the primary objective of appellants' invention. Therefore, even if one of ordinary skill in the art were moved to combine the references, there would be no recognition that the problem of combustible deposits had been solved. Having sought an increased regeneration rate for *metal* acceptors without success, the experiment would be deemed a failure,[5] without recognizing that another problem had been solved.

Accordingly, we hold that the references do not render obvious the claimed invention as a whole for purposes of 35 U.S.C. § 103 and reverse the decision of the board.

Reversed.

---

4. See In re Fenton, 451 F.2d 640, 59 CCPA 708 (1971); In re Klosak, 455 F.2d 1077, 59 CCPA 862 (1972).

5. Invalidity of motivation was not present in In re Gershon, 372 F.2d 535, 54 CCPA 1066 (1967), cited by the solicitor during oral argument, so that the experiment there would not have been deemed a failure, and the "inherent" solution to the problem of unsatisfactorily low reduction in dental enamel solubility was actually advanced. See In re Murch, 464 F.2d 1051, 59 CCPA 1277 (1972).