Application of Gurdon LESLIE.

Patent Appeal No. 76–608.

United States Court of Customs
and Patent Appeals.

Jan. 13, 1977.

J. H. Slough, Cleveland, Ohio (Squire, Sanders & Demsey, Cleveland, Ohio), attys. of record, for appellant.

Joseph F. Nakamura, Washington, D.C., for the Commissioner of Patents, John W. Dewhirst, Associate Solicitor, Washington, D.C., of counsel.

Before MARKEY, Chief Judge and RICH, and MILLER, Associate Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This appeal is from the decision of the Patent and Trademark Office Board of Appeals (board), adhered to on reconsideration, affirming the rejection of appellant's application[1] for a design patent on a golf club shaft. We affirm.

### Background

Appellant describes his contribution to the art of golf club shaft designs as follows:

> Applicant's design * * * relates to providing a short twisted or helical section or portion intermediate the grip and head ends of the shaft and spaced therefrom which contrasts with the remainder of the shaft which is of smooth cylindrical form * * * and because of its contrast therewith imparts a distinctive appearance to the golf shaft.

The references relied on are:

| | | |
|---|---|---|
| Gates | 1,525,730 | February 10, 1925 |
| Chittick | 2,150,737 | March 14, 1939 |
| Gouick (Great Britain) | 20,623 | July 20, 1905 |
| Tryon (Great Britain) | 471,020 | August 26, 1937 |
| Allen (Great Britain) | 483,995 | April 25, 1938 |

The figures from the drawings of the Chittick, Tryon, and Allen references relied on by the examiner and board, as well as appellant's Fig. 1, are reproduced below.[2]

1. Serial No. 214,515, filed December 30, 1971, entitled "Golf Club Shaft or Similar Article."

2. Inasmuch as the disclosures of the Gouick and Gates references were deemed by the board to be cumulative to Chittick, the drawings thereof are not included. Insofar as can be ascertained from the record, appellant's Fig. 1, the original of which was amended several times, is the corrected version considered by the board.

[See following illustration]

Fig. 1          Fig. 3          Fig. 1          Fig. 1
of Appellant    of Chittick     of Tryon        of Allen

Gates discloses a method of making spirally grained seamless tubing.

The drawings of Chittick illustrate, inter alia, a golf club shaft having two fluted segments separated by a smooth-walled segment centrally located on the shaft, wherein the fluted segments are twisted about the axis of the shaft to give a helical appearance.

Gouick discloses a golf club handle provided with spiral or circumferential grooves and protuberances of such a depth and height that when soft leather is wrapped around the handle, the corrugations can be felt by the holder.

Tryon discloses a golf club shaft in the form of a hollow tubular metallic body having one or more zones of undulation, each consisting of a plurality of substantially transverse, parallel or helical, circumferential grooves, the zones being disposed intermediate the ends of the shaft.

The drawings of Allen illustrate a tubular metal golf club shaft, a portion of which is depressed as a result of forcing the metal inwardly towards the axis of the shaft.

Appellant's design claim was finally rejected as unpatentable over Chittick or Allen in view of Gouick, Tryon, and Gates under 35 U.S.C. § 103. In the original

examiner's Answer, the rejection was stated as follows:

* * * Chittick teaches the design concept of a single contrasting surface segment on the central area of a golf club shaft. Allen is believed proper in teaching a single contrasting segment on a smooth-walled golf club shaft. Hence, it is believed that it would be obvious in the art to provide a contrasting segment in the center of the conventional smooth-walled golf club shaft. The twisted effect employed herein is believed to be a conventional surface treatment in view of Gates and Gouick. Moreover, Gouick shows the twisted effect on a golf club shaft. Thus, it would be obvious to one having ordinary skill in the art, as set forth in 35 U.S.C. 103, to provide a twisted surface segment on the central area of a conventional smooth-walled golf club shaft. To do so would produce an appearance similar to the design on appeal.

The examiner also observed that:

* * * Chittick shows a central smooth-walled segment and the remaining shaft portion is a grooved spiral strongly resembling, particularly in the lower area, a twisted pattern similar to that employed herein. To reverse said pattern, as suggested by Tryon, would be an obvious expedient producing a similar over-all appearance to that of the appealed design.

The board remanded the case to the examiner, noting that the statement of the rejection, quoted above, implied that the rejection was based upon Chittick *in view of* Allen and the secondary references, rather than upon the alternative use of Chittick or Allen as *primary references*, as set forth in the final rejection. Accordingly, pursuant to section 1201.01 of the Manual of Patent Examining Procedure, the board requested the examiner to "*specifically state his preferred or best ground of rejection.*"

The examiner subsequently filed a second Answer, stating that the design claim was rejected under 35 U.S.C. § 103 as unpatentable over Chittick in view of Allen, Gouick, Tryon, and Gates. The reasons given in support of the proposed combination of reference disclosures corresponded substantially to those given in the first statement from the original examiner's Answer, quoted above.

The board affirmed the rejection, relying on an analysis of the prior art differing somewhat from that relied on by the examiner subsequent to the remand. Thus, the board observed that:

Upon a comparison of the subject design with that of the reference Chittick, we get the impression of a golf club shaft having two similar portions separated by an intermediate portion of a different configuration. The two similar portions of Chittick are of a twisted configuration while the intermediate portion is of a smooth-walled configuration. It appears to us that appellant has merely reversed the relationship of the configuration taught by Chittick, i. e., utilized a twisted portion between two smooth-walled portions. The net effect of the design is of a golf club shaft having a uniformly designed shaft with an interrupted intermediate portion. In our opinion, one design is merely a manifestation of the other, and such a change of relationship, in our opinion, would be obvious to the average routineer. More especially is this so when we note that the secondary art, such as Allen and Tryon relied on by the examiner, illustrates the alternative of smooth-walled portions separated by a configured portion intermediate the same on a shaft. We have noted the examiner's use of the Gouick and Gates disclosure; however, since we find that Chittick * * * discloses a spiral twist on a shaft, we consider the disclosures of these additional references as merely cumulative to Chittick.

## OPINION

After careful consideration of the overall visual impression made by the *golf club shaft design of Chittick*, as modified by using the disclosures of the secondary references, Tryon and Allen, we agree with the board, that appellant's design would have

been obvious. As noted by the board, appellant has merely reversed the configuration of the golf club shaft of Chittick to provide a twisted segment between two smooth-walled segments, and such would have been obvious in view of Tryon and Allen, both of which show golf club shafts having a contrasting portion disposed intermediate two smooth-walled segments.

There are essentially three contentions which provide the underpinning for appellant's argument asserting the patentability of the claimed design. One contention is founded on the premise that the appearance of the design as a whole and the impression it makes on the eye are the primary considerations in determining patentability over the prior art. Based on this assumption, appellant concludes that since the golf club shafts illustrated in the references fail to create a visual impression similar to the claimed design, the design is patentably distinguishable over the art of record.

A second of appellant's contentions is that although it may be permissible to reverse the parts of a reference disclosure in order to provide evidence of the obviousness of a mechanical invention under 35 U.S.C. § 103, design applications should not be subjected to such "piecemeal anticipation." Appellant's third contention is that no combination of the references of record would result in a design similar in appearance to the design at issue. We find no merit in any of these contentions.

The proposition that the basic consideration in determining the patentability of a design is the appearance of the design as a whole and the impression it makes on the eye is unquestionably true, particularly in cases where the novelty of the design is at issue. However, where, as here, the issue is one of obviousness based on a combination of reference disclosures, an additional consideration is whether the references are so related that the appearance of certain ornamental features in one would suggest the application of those features to the other. *In re Glavas,* 230 F.2d 447, 43 CCPA 797, 109 USPQ 50 (1956). Thus, comparisons of the claimed design with individual

references are of little aid in resolving the issue of obviousness.

Appellant's contention alleging the impropriety of combining reference disclosures in design cases ignores the principle stated in *In re Krueger,* 208 F.2d 482, 483, 41 CCPA 757, 759, 100 USPQ 55, 56 (1953), which is directly applicable to the situation here presented:

> Reverence patents, granted for utility or for designs, may be combined in the proper rejection of the claim for a design patent. It is not necessary, as appellant suggests here, that the rejection must be confined to a single reference, substantially disclosing the design of the appealed claim.

This principle has been reaffirmed in numerous decisions of this court. See, e. g., *In re Finch,* 535 F.2d 70, 190 USPQ 64 (Cust. & Pat.App.1976); *In re Schilling,* 421 F.2d 747, 57 CCPA 926, 164 USPQ 576 (1970); and *In re Levy,* 310 F.2d 751, 50 CCPA 803, 135 USPQ 447 (1962). Thus, in the examination of design patent applications, just as in the examination of utility patent applications, it is permissible to modify the disclosure of a reference *unless* such modification is prompted solely by appellant's disclosure, rather than by a reasoned analysis of the prior art and by suggestions provided therein which lead to the conclusion that the design would have been obvious to the ordinary observer viewing the references alone. This is true regardless of whether the modification requires a reversal of parts or any other arrangement of design features.

In the present case, the shafts illustrated in the secondary references, particularly those of the Tryon reference, are such as to suggest the modification of Chittick proposed by the examiner and the board. In our view, the various references cited lead toward the claimed design to such a degree that appellant's contribution represents no more than an obvious advance in the development of golf club shaft designs.

Notwithstanding appellant's assertion that no combination of the references would have achieved a design similar in

appearance to the design at issue, we share the board's view that the modification of the Chittick reference would indeed have produced such a visual impression. We daresay that upon casual observation of appellant's design and the modified design of Chittick, side by side, the ordinary observer would find the "gentle, wave-form undulations" and "attractive light reflective pattern" of the former indistinguishable from the visual impression produced by the latter.

While the correctness of the standard of obviousness applied by the examiner and by the board in the present case has not been challenged explicitly, appellant has cited several cases wherein the appropriate standard to be applied in determining the obviousness *vel non* of design claims is discussed. However, the cases provide little in the way of analytical guidelines which may be applied in different fact situations. As was stated in *In re Laverne,* 356 F.2d 1003, 1006, 53 CCPA 1158, 1163, 148 USPQ 674, 677 (1966):

> No special skill is required to determine what things look like, though individuals react differently. It is bound to be an individual reaction.

Thus, the issue of obviousness of a given design is ultimately resolved subjectively according to the visual perception of the judge who finds himself cast in the role of the "ordinary observer." The opinion of this court in *In re Braun,* 275 F.2d 738, 47 CCPA 817, 125 USPQ 192 (1960), illustrates this point. After comparing the design of the treillage involved therein with the prior art design, the court noted, 275 F.2d at 740, 47 CCPA at 820, 125 USPQ at 194:

> Something from the creativity of the artist impinges itself on our consciousness which we are unable to equate with the concept of obviousness.

That "something," difficult as it may be to define precisely, is lacking in appellant's design.

Appellant's attempt to draw an analogy between the present case and the fact situation in *In re Park,* 181 F.2d 255, 37 CCPA 1021, 85 USPQ 278 (1950), the intended inference presumably being that the court's finding of nonobviousness of the design at issue there calls for the same result here, fails to convince us that the conclusion reached by the board is in error. *Park* involved a design application for a smoker's pipe having a curved stem and a bowl which simulated a golf club head. Just as in the present case, the claim was rejected as unpatentable over a combination of reference disclosures. The drawings of one of the primary references illustrated a smoker's pipe having a tuba-like bowl and a curved stem. The drawings of the secondary references depicted golf club heads similar in appearance to the bowl of the claimed design. The court there observed that after combining the reference disclosures in the manner proposed by the board, i. e., the substitution of a golf club head shown in one of the secondary references for the tuba-like bowl of the primary reference, there remained many significant differences between the claimed design and the design of the reference, as modified. In the present case, the only differences of any consequence between appellant's design and the reference design, as modified, are the depths of the grooves and the number of protuberances in the helical segment of the shaft. We view these differences as insufficient to warrant the grant of a patent in the present case.

In conclusion, we believe that the claimed design is fairly suggested by the references of record. Therefore, the decision of the board is *affirmed.*

*AFFIRMED.*

RICH, Judge, dissenting, with whom MARKEY, Chief Judge, joins.

I agree with appellant that the "mere reversal" argument of the board is not appropriate here. In general it is not appropriate to design obviousness problems. "Mere reversal" can result in an entirely unobvious change in overall appearance.

I find the difference between appellant's design and the cited art to be even greater than the difference which led us to reverse the rejection in *In re Laverne,* 356 F.2d

1003, 53 CCPA 1158, 148 USPQ 674 (1966). The test we applied in that case was approved as one of ancient validity by the Ninth Circuit Court of Appeals in *Schwinn Bicycle Co. v. Goodyear Tire & Rubber Co.*, 444 F.2d 295, 168 USPQ 258 (CA 9 1970).

The examiner, requested by the board to state his best rejection, relied on a combination of five references to assemble his obviousness argument from elements found in the references. He did this because he could not find a golf club shaft in the prior art that *looks like* appellant's shaft. Most designs are assembled from old elements. We are concerned only with the final effect on appearance. What we have here is a typical hindsight reconstruction of an unobvious design.

The board referred to "routine workers" and "average routineers." What these are in the field of ornamental design is not clear. Who can say that, given all the prior art, one of them would have produced appellant's design? Designers are a class of artists. We should test their final products by a look-alike test, by overall visual impression, not by element-by-element analysis and reconstruction.