**In re Klaus HECK.**

**Appeal No. 82–558.**

United States Court of Appeals, Federal Circuit.

Feb. 14, 1983.

Karl F. Ross, New York City, for appellant.

Joseph F. Nakamura, Sol., and John W. Dewhirst, Associate Sol., U.S. Patent and Trademark Office, Washington, D.C., for appellee.

Before DAVIS and MILLER, Circuit Judges, and SKELTON, Senior Circuit Judge.

OSCAR H. DAVIS, Circuit Judge.

This appeal is from a decision of the Patent and Trademark Office (PTO) Board of Appeals (board) sustaining the examiner's rejection of claims 1–6 as obvious under 35 U.S.C. § 103. We affirm.

Appellant's invention (as set forth in his application for "Camshaft with Hardened Cam Surfaces") involves camshafts in which the camming surfaces although engageable over their entire widths by cam followers are hardened in central regions and remain unhardened along edge regions, with both of the regions being engaged by the cam follower.[1] The examiner and the board held a patent precluded by § 103 because

---

1. Claim 1 is set forth as representative:

"1. In a camshaft having a central shaft and a plurality of cams each having an outer surface engageable with an actuating member, the improvement wherein said camshaft is made of cast iron and said surfaces are hardened only over a central region and have unhardened edge regions, said actuating member engaging said surface at said central and edge regions."

Ackerman et al. in view of Turkish discloses a cast iron (hardened) camshaft with cam lobes engaged with actuating members, and the British patent to Maybach-Motorenbau shows the use of hardened central areas of cams with softer edges.[2] Appellant challenges only the reliance on Maybach.

The Maybach patent discloses figures showing, first, the hardening of a journal and, second, the hardening of the cam itself (especially fig. 3, which is reproduced in the dissent). With respect to the latter, the patent describes placing a weld bead of hardened material (16) in the cam and then states:

> The built-up material 16 forms with the basic material of the shaft 11 an interpenetration zone 15, as shown by the cross hatching. The material 16 applied in the hollow fillet 13 runs straight to such an extent that only a small amount of grinding is necessary, and since the narrow lateral boundaries 14 lie for the most part in the interpenetration zone 15 between the basic material and the built-up material, the grinding wheel cannot be fouled if it grinds over these parts.[3]

The board and the examiner, interpreting this prior disclosure as showing the edge regions of the cam as softer than the hardened central region of the cam, considered that appellant's invention would have been obvious to persons of ordinary skill in the art.

In fact, Maybach shows cams with hardened central regions and less hardened edges (which the PTO characterized as softer). Appellant's invention presupposes a hardened center but calls for unhardened edges. We agree in this instance with the PTO that the change, if there is a differ-

ence, from less hardened edges to unhardened edges would have been obvious to persons skilled in the art. Both inventions involve camshafts of cast iron or comparable hard material; neither involves a truly soft material; and both concern problems arising from contact between the speedily rotating shaft and the actuating members. The less hardened edges of Maybach and appellant's unhardened edges are concerned with different aspects of these problems, but both call for a hardened center and not-so-hard edges of the cams (in neither case with truly soft edges). Maybach's less hardened edges are appropriately described as softer than the center, just as appellant's unhardened edges can properly be so described. The latter's own application to the PTO states (R. 8): "As a result [of the hardening of the center] the edges of the cams remain *relatively soft* * * *" (emphasis added). To those in the camshaft-designing art, Maybach showed that softer edges of cams, with harder centers, can have significant consequences for alleviating problems arising from friction between the shaft and the members.[4] In appellant's claims, "hardened" and "unhardened" are similarly relative terms; we have to give them the broadest reasonable interpretation during the prosecution of the patent application. *In re Pearson,* 494 F.2d 1399, 1404, 181 USPQ 641, 645 (Cust. & Pat.App.1974).

It makes no difference to this case that Maybach dealt with a different specific problem, within the narrow area of minimizing or taking advantage of the effects of such friction, than does Heck. As the Court of Customs and Patent Appeals said in a section 103 case (*In re Lemelson,* 55 Cust. & Pat.App. 1294, 397 F.2d 1006, 1009,

---

**2.** These references are as follows:

| Turkish | 3,272,189 | Sept. 13, 1966 |
|---|---|---|
| Ackerman et al | 3,384,515 | May 21, 1968 |
| Maybach-Motorenbau (British Patent) | 859,327 | Jan. 18, 1961 |

**3.** The "interpenetration zone" is where the hardened and unhardened materials are mixed, resulting in material in that zone which is not as hard as the weld bead 16. After grinding a surface results that is thicker at the middle than at the edges.

**4.** The Maybach specification says: "If, however, the coated contact surfaces and the adjacent shaft sections are ground down to the same diameter, the soft basic material is ground away with the coating layer and leads to fouling of the grinding wheel" and (after describing the Maybach invention) "The fouling of the grinding wheel which occurs when grinding soft material is thus completely avoided."

158 USPQ 275, 277 (1968)): "The use of patents as references is not limited to what the patentees describe as their own inventions or to the problems with which they are concerned. They are part of the literature of the art, relevant for all they contain." Maybach suggests, as we·have pointed out (see note 4), the tendency of softer material to grind away more easily, and the use of that softer material in connection with harder material (i.e. a harder center). In that instance, the difference between the two types of material was used to lessen the grinding away of the softer material, while here the applicant's purpose is to have the softer edges wear away more rapidly. But the use together of the two types of material, as well as the difference in wearing-away quality, were known in the prior art (through Maybach), and it would have been obvious to those skilled in the art to use them together when a differential in wearing-away was desired, even though appellant's particular purpose was different from that of Maybach. See In re Gershon, 54 Cust. & Pat.App. 1066, 372 F.2d 535, 538–39, 152 USPQ 602, 605 (1967).

For this reason, we do not consider Maybach as "teaching away." [5] Its specific use was different, but broader disclosures of that patent were made known, were useful and were legally available to appellant. The prior art involved in this case is very narrow, directly related to the automotive camshafts with which Heck's invention is concerned, and zeroes in on the difference in the wearing-away of hardened and less hardened materials of cams. Persons of ordinary skill in the cam-designing art are presumed to be familiar with this precise background.[6]

What we have said disposes of claim 1, the major and independent claim. Claims 2 through 5 simply add variations in the relative dimensions between the hardened region and the unhardened regions, or specify

the use of grey cast iron. The examiner rejected these claims as "obvious choices of routine design," and the board affirmed rejection of these claims without separate discussion. Appellant has not shown, or made a substantial attempt to show, unobviousness of such minor changes in degree if claim 1 would have been obvious (as we have held). Cf. In re Reni, 419 F.2d 922, 924–25, 164 USPQ 245, 247 (Cust. & Pat. App.1970). (Claim 6, adding that the actuating member engages the cam surface substantially in line contact, has not been argued separately from the main claim and falls with it.)

AFFIRMED.

JACK R. MILLER, Circuit Judge, dissenting.

I cannot agree with the conclusion that appellant's invention would have been obvious within the meaning of 35 U.S.C. § 103 in view of the cited references. That conclusion is based on misinterpretation of the Maybach patent and on unsupportable inferences drawn from that reference.

The prior art, characterized by the Ackerman et al. and Turkish references cited by the PTO, teaches hardening of hardenable metal cam surfaces over their entire width to reduce wear. However, hardened cam surfaces have a tendency to gouge the cam follower which is in sliding contact with the cam surface. This gouging problem is particularly acute during the break-in or run-in period.

Appellant has discovered that the gouging problem can be overcome by the seemingly simple expedient of hardening only a portion of a hardenable metal cam surface, so that the cam has a central stripe of hardened metal running around the cam surface which is flanked on either side by totally unhardened material. The cam follower engages both the hardened and unhardened regions.

5. Before the examiner and the board appellant did not make the argument that Maybach "taught away," but he does make it before us.

6. Appellant does not rely on any of the "secondary considerations" of Graham v. John

Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966) and United States v. Adams, 383 U.S. 39, 86 S.Ct. 708, 15 L.Ed.2d 572, 148 USPQ 479 (1966).·

The PTO cited three references to support its § 103 obviousness rejection of appellant's six claims. An understanding of these references and of appellant's invention is essential to correct resolution of this case.

Ackerman et al. teaches the well-known prior art expedient of surface-hardening a cast-iron cam by flame or induction heating followed by rapid cooling. The reference states: "The surface of the camshaft lobes must be extremely hard and resistant to wear. The rest of the casting must be durable and machinable." This is reflective of the conventional wisdom in the art, acknowledged in appellant's patent application, that a cam should be hardened over its entire surface to minimize wear.

Turkish teaches a camshaft having cams that engage valve lifters in the manner disclosed and claimed by appellant. Nothing in either the Ackerman et al. or Turkish references suggests that it would be desirable to harden less than the entire cam surface.

The Maybach-Motorenbau GmbH ("Maybach") patent is the reference on which the majority relies for its conclusion that it would have been obvious to harden only the central region of a cam surface and to provide "softer edges." Unlike appellant, Ackerman et al., and Turkish, Maybach does not involve hardening the surface of an iron cam. Rather, Maybach's cam is formed of austentitic steel, *which is unhardenable*,[1] having a groove around its surface. This groove is filled with a different, wear-resistant metal.

When a layer of hard material is applied to a shaft (to form a journal, for example), Maybach notes the following problem with prior art processes:

If ... the coated contact surfaces and the adjacent shaft sections are ground down to the same diameter, the soft basic material is ground away with the coating layer and leads to fouling of the grinding wheel.

These disadvantages are very largely removed by the invention ....

Maybach's solution to this problem is to provide a groove on the shaft having "narrow lateral boundaries" or edges raised *above* the surface of the shaft. The layer of hard material applied in the groove fills it to the level of the raised edges (or slightly beyond). Thus, when the hard material is ground down during subsequent manufacturing steps to provide a smooth surface, there is no danger of grinding the soft material of the shaft because the hard metal is not ground down to the level of the soft metal shaft. Therefore, grinding wheels are not fouled. In addition to its utility for forming journals on shafts, Maybach mentions that the invention is useful for providing a surface of "abrasion-resistant material" for cams.

The Maybach invention, as it is applied to cam surfaces, is illustrated in figures 1–4.

Fig. 1  Fig. 2  Fig. 3  Fig. 4

With reference to figure 1, a cam 12 is on shaft 11. A groove or "hollow fillet" 13 having narrow lateral boundaries 14 is formed in the cam. Then, with reference to figure 3, a bead of harder material 16 is placed in the groove by welding.

The built-up material 16 forms with the basic material of the shaft 11 an interpenetration zone 15, as shown by the cross hatching. The material 16 applied in the hollow fillet 13 runs straight to

---

1. This is in marked contrast to the disclosures of appellant, Ackerman et al., and Turkish, all of which are concerned with cams made of hardenable metal.

such an extent that *only a small amount of grinding is necessary,* and since the narrow lateral boundaries 14 lie for the most part in the interpenetration zone 15 between the basic material and the built-up material, the grinding wheel cannot be fouled if it grinds over these parts. [Emphasis supplied.]

The "interpenetration zone" is where the applied hard material and soft base materials are mixed, resulting in material which, according to the board's interpretation, is not as hard as the pure weld bead 16. In any event, Maybach explicitly teaches that the aforementioned prior-art problem, the fouling of the grinding wheel when grinding adjacent soft and hard materials, is avoided. It is clear that the narrow lateral boundaries, which lie in the interpenetration zone, are no longer "soft," because the grinding wheel "cannot be fouled if it grinds over these parts." Accordingly, Maybach is consistent with the accepted belief in the art that a cam should be hardened over its entire surface. It should be noted that in figure 3 the boundaries 14 (shown in figure 1) do not appear because they are covered with hard weld metal.

The question is whether it would have been obvious to a person of ordinary skill in the art at the time appellant made his invention to modify the Ackerman et al. or Turkish cam (hardened over the entire surface) to produce a cam surface "hardened only over a central region and [with] unhardened edge regions." In considering the question, it is to be noted that there must be some reason, apparent to one of ordinary skill in the art, for modifying the prior art to arrive at the claimed invention. *See In re Samour,* 571 F.2d 559, 563, 197 USPQ 1, 4 (Cust. & Pat.App.1978).

I am satisfied that Maybach would not have provided such a reason to modify the cam surface of Ackerman et al. or of Turkish to arrive at the claimed invention. First, even if a cam of the type taught in

those references were supplied with a hollow fillet filled with hard material and having narrow lateral boundaries, then ground to a uniform diameter, the resulting camshaft would not meet the limitations of the claims. Even disregarding the fact that the surface of the cam would no longer be "hardened" as that term is used by both appellant and the other references, but, rather, would be covered with a harder material, the narrow lateral boundaries would not be considered "unhardened." Otherwise, the problem Maybach sought to solve with his invention would remain unsolved, and the grinding wheel would be fouled when grinding over the applied material.[2] Second, Maybach provides not the faintest suggestion *why* it would be desirable, when hardening a cam surface, not to harden the *entire* surface.

In this case, appellant's own disclosure provides the only suggestion of record that *unhardened* edge regions are desirable for cam surfaces, contrary to the accepted teaching in the art that the *entire surface* should be hardened. However, *an applicant's disclosure cannot be used against him. In re Wertheim,* 541 F.2d 257, 269, 191 USPQ 90, 102 (Cust. & Pat.App.1976); *see In re Leslie,* 547 F.2d 116, 120, 192 USPQ 427, 430 (Cust. & Pat.App.1977).

The majority opinion would supply the reason to modify Maybach, thus:

To those in the camshaft-designing art, Maybach showed that softer edges of cams, with harder centers, can have significant consequences for alleviating problems arising from friction between the shaft and the [actuating] members.

This statement is totally without support in Maybach and is, in fact, contrary to the teaching of that reference. Maybach teaches nothing regarding "problems arising from friction" between the cam or shaft and the actuating member. Indeed, the only thing Maybach teaches about "softer

---

**2.** It is well-established patent law that a determination of obviousness under section 103 requires consideration of the entirety of the disclosure made by the references to one of ordinary skill in the art. *See, e.g., In re Rinehart,*

531 F.2d 1048, 1051, 189 USPQ 143, 146–47 (Cust. & Pat.App.1976). And the problems sought to be solved by the references are to be considered. *Id.* at 1054, 189 USPQ at 149.

edges of cams" is that they are undesirable because they foul the grinding wheel during the manufacturing process and that they should be avoided.

Moreover, the majority opinion gratuitously states that the only difference between the "less hardened edges" said to be present in Maybach and the unhardened edge regions of the claimed invention is one of degree. To the contrary, surface hardening of cast iron is an either/or proposition: either a surface has been hardened (and is, therefore, harder than the base material) or it hasn't.

The majority opinion further misinterprets the reference when it states that in Maybach—

> the difference between the two types of material was used to lessen the grinding away of the softer material, while here the applicant's purpose is to have the softer edges wear away more rapidly.

The "grinding away" in Maybach is a part of the manufacturing process whereby the irregular surface of the weld bead applied in the groove is ground down to form a smooth surface of uniform diameter. It is unrelated to how the shaft or cam will wear in use. The object of the Maybach invention was to avoid grinding soft metal that would plug up or foul grinding wheels. The reference has nothing to do with whether cams hardened over only a portion of their surface are more desirable in use than cams hardened over their entire surface. Provision of a cam surface that is *not* entirely "hard" is clearly not disclosed by Maybach. Therefore, the conclusion drawn in the majority opinion, that—

> the use together of the two types of material, as well as the difference in wearing-away quality, were known in the prior art (through Maybach), and it would have been obvious to those skilled in the art to use them together when a differential in wearing-away was desired, even though appellant's particular purpose was different . . .

finds no support at all in the record.

Finally, even if it were true that the record establishes that it would have been

obvious to a person of ordinary skill in the art to use hardened and unhardened materials together "when a differential in wearing-away was desired," the majority opinion fails to consider *why* a person of ordinary skill in the art would *want* "a differential in wearing-away." Only appellant discloses the desirability of such a result.

The decision of the board should be reversed.

