878 F.2d 1446
 12 U.S.P.Q.2d 1076
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
LANTECH, INC., Plaintiff-Appellant,
v.
KAUFMAN COMPANY OF OHIO, INC., Defendant/Cross-Appellant.
 Nos. 88-1541, 88-1551.
 United States Court of Appeals, Federal Circuit.
 June 16, 1989.
Rehearing Denied Sept. 1, 1989.
 
 Before BISSELL and ARCHER, Circuit Judges, and EDWARD D. RE, Chief Judge.*
 ARCHER, Circuit Judge.
 
 DECISION
 
 1
 Lantech, Inc. (Lantech) appeals the judgment of the United States District Court for the Northern District of Ohio, Case No. C85-7190, that U.S. Patent No. 4,418,510 ('510) is invalid and unenforceable. Kaufman Company of Ohio (Kaufman) cross-appeals challenging the court's failure to award it attorney fees under 35 U.S.C. Sec. 285 (1982). We affirm.
 
 OPINION
 I.
 
 2
 Lantech contends that the prior art on which the district court based its invalidity holding would not have suggested to one skilled in the art the process claimed in the '510 patent. Lantech also argues that the court failed to give proper weight in its 35 U.S.C. Sec. 103 (1982) analysis to the commercial success of Lantech's powered prestretch machine.
 
 
 3
 A. Before making its obviousness determination, the district court fully analyzed the prior art. The court found that the Thimon patent discloses "a process for wrapping a load in stretchable plastic film characterized by stretching the film before applying the film to the load" and that the "force on the load was substantially below the force required for stretching the film." The '806 patent, according to the court's findings, discloses a stretch wrap process wherein the film is stretched "between 2% and 100% while the yield points of most films were ... between 15% and 40%." And finally, the court found that the "Snakesheet" newsletter published by a competitor discusses and discloses "new found" strength that may be obtained by stretching wrapping film beyond its yield point.
 
 
 4
 After discussing the references, the district court set forth its reasons for concluding that the invention would have been obvious from the combination of the cited prior art, as follows:
 
 
 5
 The applicants' [sic patentees'] invention was the Thimon invention of prestretching with a reduction in force on the load. However, the '510 patent had the added improvement over Thimon of stretching film beyond the yield point. The '806 patent and the Snakesheet disclosed the advantages and suggested the desirability of stretching film over the yield point.
 
 
 6
 We are unpersuaded that the court was clearly erroneous in its analysis of the references. Further, we perceive no error in the district court's conclusion that the teachings of these references would have motivated, or suggested to, the skilled artisan to increase the elongation force applied to the wrapping film in the Thimon method. See Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co., 730 F.2d 1452, 1462, 221 USPQ 481, 488 (Fed.Cir.1984); see also Uniroyal, Inc. v. Rudkin-Wiley Corp., 837 F.2d 1044, 1051, 5 USPQ2d 1434, 1438 (Fed.Cir.1988).
 
 
 7
 Lantech argues that the district court's conclusion is erroneous because the prior art fails to indicate the economic advantage disclosed in the '510 patent which is gained from the use of highly stretched films. The recitation of an additional advantage associated with doing what the prior art suggests does not lend patentability to an otherwise unpatentable invention. Application of Kronig, 539 F.2d 1300, 1304, 190 USPQ 425, 427-28 (CCPA 1976) (rejection not "deficient merely because appellants allege a different advantage resulting from the addition of water ... it is sufficient here that Yasui et al. clearly suggest doing what appellants have done, viz., adding water"). See also In re Heck, 699 F.2d 1331, 1332-33, 216 USPQ 1038, 1039 (Fed.Cir.1983); In re Lintner, 458 F.2d 1013, 1016, 173 USPQ 560, 562-63 (CCPA 1972).
 
 
 8
 B. Lantech's arguments concerning the commercial success of its powered prestretch machine do not establish that the district court's conclusion of obviousness was wrong. Although the court found that the Lantech machine had attained significant commercial success, it concluded that that success "cannot be totally attributed to the '510 patent." Bearing on that conclusion, the court said the patentee's invention was the "Thimon invention" with the added improvement of "stretching film over the yield point" and that there were "relatively slight differences between the '510 patent and the prior art." The court noted that the greatly expanded overall stretch-wrapping market was attributable to the advantages disclosed in Thimon that were embodied in the patented process. It also made a point of the fact that Lantech's apparatus claims drawn to its machine were rejected for anticipation by Thimon and cancelled. In sum, the court's findings do not specifically suggest that the '510 process enhanced the commercial success of Lantech's machine.
 
 
 9
 It is apparent that the district court fully considered commercial success as required by Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1538, 218 USPQ 871, 879 (Fed.Cir.1983), yet it discounted the impact of the patented process on the commercial success of the machine. See Pentec, Inc. v. Graphic Controls Corp., 776 F.2d 309, 315, 227 USPQ 766, 770 (Fed.Cir.1985). Moreover, commercial success "cannot by itself establish nonobviousness" (emphasis in original), Lindemann Maschinenfabrik GMBH, 730 F.2d at 1461, 221 USPQ at 488. On the record before us, we are not persuaded that the court's findings regarding Lantech's commercial success were clearly erroneous or that it reached an erroneous conclusion of law in holding the '510 patent invalid under 35 U.S.C. Sec. 103. See Polaroid Corp. v. Eastman Kodak Co., 789 F.2d 1556, 1558, 229 USPQ 561, 563 (Fed.Cir.), cert. denied, 107 S.Ct. 178 (1986).
 
 
 10
 C. Because we affirm the district court's invalidity determination, we do not address Lantech's appeal of the district court's conclusion that the '510 patent was also unenforceable.
 
 II.
 
 11
 In claiming that it should have been awarded attorney fees under 35 U.S.C. Sec. 285, Kaufman argues that the court erred by failing to find Lantech's misrepresentation before the U.S. Patent and Trademark Office (PTO) intentional rather than "at least grossly negligent." As the opinion makes clear, the trial judge was fully cognizant of all the facts associated with Lantech's conduct before the PTO. In the face of such facts, the court nonetheless declined to characterize Lantech's conduct as intentional or to find the case exceptional. Based on the quantum of proof required of Kaufman to prove an exceptional case, see Reactive Metals Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1582, 226 USPQ 821, 824 (Fed.Cir.1985), we are not convinced that the district court erred. Moreover, even if the district court had found this case to present exceptional circumstances, section 285 does not mandate that attorney fees be awarded. That determination is a discretionary matter for the trial court. Id. See also Rohm & Haas Co. v. Crystal Chem. Co., 736 F.2d 688, 222 USPQ 97 (Fed.Cir.1984).
 
 
 12
 Accordingly, we affirm the decision of the district court.
 
 
 13
 BISSELL, Circuit Judge, dissenting in part.
 
 
 14
 I dissent from part I of the majority's opinion because I would reverse the district court's decision holding invalid and unenforceable United States Patent No. 4,418,510 ('510). The district court found that Lantech's '510 power prestretch wrapping process was highly successful, but concluded that much of the commercial success was attributable to the Thimon prior art process, not the '510 process. There is no evidence that Lantech's commercial success resulted from what the prior art disclosed. To the contrary, all the evidence points to the '510 process as the reason for Lantech's significant success. Meaningful film usage reductions and cost savings are achieved only by stretching films over their yield point.
 
 
 15
 Additionally, the district court found significant objective evidence of long felt need, competitors' disbelief followed by copying, and licensing. In my view, the district court erred by discounting its findings of commercial success and other objective evidence of nonobviousness because of "relatively slight differences" between the '510 patent and the prior art. See Datascope Corp. v. SMEC, Inc., 776 F.2d 320, 324, 227 USPQ 838, 841 (Fed.Cir.1985) (instructing that it is error to focus solely on the differences between the claimed invention and the prior art because slight differences may be the key to success).
 
 
 16
 The district court abused its discretion in holding the '510 patent unenforceable for inequitable conduct because a finding of gross negligence, without more, is not sufficient to support that holding. See Kingsdown Medical Consultants, Ltd. v. Hollister Inc., 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (in banc) (stating that " 'gross negligence' does not of itself justify an inference of intent to deceive"). Finally, I would affirm the court's infringement findings.
 
 
 
 *
 The Honorable Edward D. Re, Chief Judge, United States Court of International Trade, sitting by designation